628 So.2d 294 (1993)
Michael Eugene HATTEN
v.
STATE of Mississippi.
No. 91-KA-0144.
Supreme Court of Mississippi.
November 24, 1993.
*295 Carter Dobbs, Jr., Amory, for appellant.
Michael C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
SMITH, Justice, for the court:
Michael Hatten was found guilty of robbery in the Circuit Court of Monroe County and sentenced to fifteen years imprisonment. On appeal to this Court, Hatten raises five assignments of error, one of which merits discussion, the remaining being totally devoid of merit. Hatten, who is African-American, claims the trial court committed reversible error by failing to find that two members of the venire were improperly struck from the jury panel, in violation of Hatten's equal protection rights under Batson v. Kentucky, 476 U.S. 79, 85-86, 106 S.Ct. 1712, 1716-17, 90 L.Ed.2d 69, 80 (1986).
We mandate prospectively the requirement that a trial judge make an on-the-record factual determination that each reason proffered by the State for exercising a peremptory challenge is, in fact, race neutral. This procedure is necessary to protect the rights of both defendants and potential jurors, as well as making clear the ruling of the trial judge for purposes of appellate review. However, finding no violation of Hatten's equal protection rights under the facts presented, we affirm Hatten's conviction and sentence.

FACTS
A Monroe County Grand Jury indicted Michael Hatten for the crime of armed robbery on or about November 18, 1989, of an employee of the Southside Amoco gas station in Aberdeen, Mississippi. The indictment charged that Hatten, by the "exhibition of ... what appeared to be a pistol concealed in [his] pocket" assaulted an Amoco employee and stole $65 from the station. Hatten entered a plea of not guilty in March 1990, and trial was held in June 1990. Because we address only the Batson issue presented, the bulk of the underlying facts are omitted as unnecessary to the opinion.
*296 Demetric Arville Ewing testified he was working at the Southside Amoco gas station on the evening of November 18, 1989. He was taking inventory at about 7:45 p.m. when he heard a person outside the locked door. Ewing opened the door and the man asked whether Ewing had any oil. The man then said: "I'll tell you what, I don't want to make a scene or anything but I'm about to rob you." After stating he had a pistol, the man told Ewing to go to the cash register. Ewing handed him all the money in the register, and then, taking some packs of cigarettes, the man instructed Ewing to "get down and count to one hundred." The robber left and Ewing called the police. Ewing estimated about $60 had been stolen.
Hatten testified that on the night of November 18, he smoked crack cocaine with Annie McFarland at Hatten's house. According to Hatten, he was told his cigarette contained marijuana, but it was actually laced with crack. Hatten testified he had never used crack before, and the drug "put me in a state of incapable thinking." After spending all his money on crack, Hatten still wanted more and stated that McFarland told him "she knew a guy at a place that we can obtain money from by going in the place and asking for it." Arriving at the Amoco station, McFarland gave Hatten a brown paper bag and told Hatten to go in, tell the attendant he came to pick up the money and ask for a carton of cigarettes.
Hatten did so and told the attendant to turn around and count to one hundred before turning back around. McFarland then drove around, picked up Hatten, and the two left. They used the stolen money to buy more crack.
Hatten was cross-examined on why his explanation about smoking crack did not appear in his statement to police; he stated he had told this to the police, but they did not write it down. Hatten further stated the language "this is a holdup" was included in his statement by the police to further incriminate him.
Annie McFarland took the stand, but would state only her name and address for the record. She would answer no further questions, invoking her Fifth Amendment right against self-incrimination.
The jury, deliberating for less than ten minutes, returned a guilty verdict on the lesser charge of robbery. Hatten was sentenced to fifteen years under the supervision of the Mississippi Department of Corrections.

DISCUSSION

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN PERMITTING THE STATE TO EXCLUDE BLACKS FROM THE JURY UNDER BATSON v. KENTUCKY.

In the proceedings below, the State exercised five of its peremptory challenges against black veniremen. Their names and reasons given for the challenges were as follows:
S-1: Venirewoman # 13, Christine Dobbs.

Rebuttal: Venirewoman said her daughter was being represented by Hatten's attorney in an on-going lawsuit.

Response: None from Hatten.

Ruling: Non-pretextual. Venirewoman excused.
S-2: Venireman # 16, Leonard Whitley.

Rebuttal: State "did not like the appearance of Mr. Whitley, felt that he would not be a good juror to hear this case."

Response: Hatten began to respond but was instructed by the trial court that no response was needed.

Ruling: Pretextual. Venireman seated on jury.
S-3: Venireman # 21, Harry A. Swan.

Rebuttal: State had been informed by local law enforcement officers that Venireman # 21 had been arrested for bootlegging in the past. As such, "Mr. Swan would probably not be the type of law-abiding citizen in Monroe County that we'd like to see serve as a juror." The State then called a deputy with the Monroe County Sheriff's Department who testified under oath that he apprehended Swan driving into a dry portion of the county with a truckload of liquor.

*297 Response: Hatten did not have an opportunity to respond to the officer's testimony. Prior to the deputy's testimony, Hatten objected that the State's contention that Swan was bootlegging was unsubstantiated.

Ruling: Non-pretextual. Venireman excused.
S-4: Venireman # 22, Lynda Kay Strong.

Rebuttal: Strong was inattentive and giggling during voir dire. The State also alleged Strong "caused a disturbance with what seemed to be a candy wrapper." The State also asserted: "She stood up at one time and tried to explain as to whether or not she knew one of the witnesses; made very little sense. We could not ascertain as to whether or not she did know this person."

Response: Hatten stated: "As to Lynda Kay Strong, her being allegedly inattentive and giggling, I didn't observe that, Your Honor. And about her answers, the State had the opportunity to question her, and if they couldn't ask the right question or enough questions to get an answer, then that's their fault."

Ruling: Non-pretextual. Venirewoman excused.
S-5: Venireman # 27, Alonzo Sykes.

Rebuttal: Sykes stated during voir dire that he knew Annie McFarland, the alleged getaway driver in the case. Sykes also stated he knew Lee Anna Walker, another individual who might be called as a witness.

Response: McFarland and Walker may be called by the State as well as the defense. Also, there were other veniremen who knew potential witnesses who were not struck.

Ruling: Non-pretextual. Venireman excused.
The trial judge's ruling on the Batson issue was as follows:
THE COURT: All right. The Court finds that the State has properly articulated non-racial reasons for using their challenges against juror Christine Dobbs, juror Harry A. Swan, juror Lynda Kay Strong and juror Alonzo Sykes. However, I don't find there was sufficient reasons even though it appeared to be non-racial or could appear to be non-racial. He's black; if they don't like his looks it may be because he is black, and so, therefore, I'm not going to allow the State to challenge juror Leonard McKinley Whitley, Jr. He will be placed on the jury unless the defendant desires to challenge him.
On appeal, Hatten challenges the determination of the trial judge regarding the use of peremptory strikes against Venirewoman Linda Kay Strong (# 22) and Venireman Alonzo Sykes (# 27). Hatten claims: "The Court made a finding that the State had properly articulated non-racial reasons for the using of peremptory challenges against these two prospective jurors. The Court made no factual determination as to whether the facts as stated by the assistant district attorney were true and correct or not." Hatten concludes the trial court's failure to make factual findings regarding the validity of the reasons given by the State for the use of its challenges requires reversal of this case.
The State maintains: "All that is necessary is that there exist support in the record for the court's decision," and that there is nothing in the record which would indicate that the trial court's ruling was "clearly erroneous or against the overwhelming weight of the evidence." Lockett v. State, 517 So.2d 1346, 1350 (Miss. 1987).
At the outset we point out that this area of the law is one in which it is most difficult to make a record. It is important to note that Hatten's attorney, for example, does not deny the State's allegations that Venirewoman Strong was inattentive and giggling, only that he did not observe this demeanor. Calling attention to a such a matter in front of the entire venire would tend to potentially prejudice other veniremen by the comments to the trial judge. Further, by the time a matter is called to the trial judge's attention, it may no longer exist. This type of situation requires a trial judge to constantly scan the trial proceedings with eyes like an eagle. What will we decide when asked to determine whether or not some potential juror gave a glaring look to a defendant or his counsel during voir dire?
*298 We point out the difficulties involved in every Batson determination in order to admonish parties that the failure to provide this Court with a complete record for our review only complicates matters. The portion of the jury selection process wherein the State and Hatten peremptorily struck individuals from the venire was not made a part of the record. In Pacee v. State, 306 Ark. 563, 816 S.W.2d 856 (1991), the Supreme Court of Arkansas was confronted with a similar case in which the voir dire proceedings were excluded by the appellant's attorney. The Arkansas Court noted that since it was deprived of the critical part of the record which allowed a consideration of "all relevant circumstances," as Batson calls for, the claim must be rejected.
This Court has not directly addressed the issue of whether a trial judge is required to make an on-the-record factual determination of race neutral reasons cited by the State for striking veniremen from a panel. The Batson Court declined to provide specific guidelines for handling this issue. This Court has articulated the general law in this state which provides that "it is the duty of the trial court to determine whether purposeful discrimination has been shown," by the use of peremptory challenges. Wheeler v. State, 536 So.2d 1347 (Miss. 1988); Lockett v. State, 517 So.2d at 1349.
In considering this issue, we today decide it necessary that trial courts make an on-the-record, factual determination, of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors. This requirement is to be prospective in nature. Of course, such a requirement is far from revolutionary, as it has always been the wiser approach for trial courts to follow. Such a procedure, we believe, is in line with the "great deference" customarily afforded a trial court's determination of such issues. "Great deference" has been defined in the Batson context as insulating from appellate reversal any trial findings which are not clearly erroneous. Lockett v. State, 517 So.2d at 1349-50. Accord Willie v. State, 585 So.2d 660, 672 (Miss. 1991); Benson v. State, 551 So.2d 188, 192 (Miss. 1989); Davis v. State, 551 So.2d 165, 171 (Miss. 1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 797 (1990); Chisolm v. State, 529 So.2d 630, 633 (Miss. 1988); Johnson v. State, 529 So.2d 577, 583-84 (Miss. 1988) Obviously, where a trial court offers clear factual findings relative to its decision to accept the State's reason[s] for peremptory strikes, the guesswork surrounding the trial court's ruling is eliminated upon appeal of a Batson issue to this Court.
Returning to the instant case, it is clear that the trial judge made a sincere, bona fide effort to properly weigh and examine the race-neutral reasons cited by the State. He attempted to determine, on the record, whether each of the State's reasons for striking black jurors was in fact racially neutral.
The record indicated the judge undertook an evaluation of each reason given for striking each potential juror. When the State attempted to strike Venireman Leonard Whitley, for instance, because the prosecutor "did not like the appearance of Mr. Whitley," the trial judge instantly ruled the proffered reason to be pretextual and promptly seated Mr. Whitley on the jury. The trial judge was certainly sensitive "to the possibility that the reasons given for challenging prospective jurors ... may well have served as masks for actual racially discriminatory purposes." Chisolm v. State, 529 So.2d 635, 639 (Miss. 1988).
The Alabama court has elaborated on the discretion given to their trial courts in O'Neal v. State, 602 So.2d 462, 464 (Ala. Crim. App. 1992). In reviewing a Batson hearing where the trial judge's rulings were substantially similar to those by the judge in the case at bar, the Alabama court stated:
Based on the foregoing, we find no "clear error" in the trial court's determination, particularly in light of the court's decision to place [venireman] back on the jury as a result of the prosecutor's ostensibly insufficient race-neutral explanation. The reasons given for striking [two veniremen] were based on considerations other than race, and the trial court correctly so ruled.
Id. at 465.

CONCLUSION
In an in-depth review of the Batson issue, this Court in Lockett v. State stated:

*299 We emphasize what the United States Supreme Court pointed out in Batson, that "`[t]here are any number of bases' on which a prosecutor reasonably may believe that it is desirable to strike a juror who is not excusable for cause ... however, the prosecutor must give a `clear and reasonably specific' explanation of his `legitimate reasons' for exercising the challenges." Batson, 476 U.S. at 98, 106 S.Ct. at 1723, 90 L.Ed.2d at 88, n. 20. We place our trust in the trial judges to determine whether or not a discriminatory motive underlies the prosecutor's articulated reasons.
517 So.2d at 1352.
To the above we add only that the trial judge, in determining which explanations are sufficiently race-neutral and which are not, should give an equally "clear and reasonably specific" explanation for his ruling. As we also stated in Lockett, "[t]his perspective is wholly consistent with our unflagging support of the trial court as the proper forum for resolution of factual controversies." Id. at 1350.
From that part of the record before us, it is obvious that the trial judge did not merely accept the specific reasons given by the prosecution at face value, but considered whether they were contrived. He found one explanation insufficient, and the others race-neutral. Such findings will not be reversed unless they appear clearly erroneous or against the overwhelming weight of the evidence. Wheeler v. State, 536 So.2d at 1352; Lockett v. State, 517 So.2d at 1350. Accordingly, Hatten's conviction for robbery and sentence of fifteen years imprisonment is affirmed.
CONVICTION OF ROBBERY AND SENTENCE OF 15 YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.
DAN M. LEE and PRATHER, P.JJ., and PITTMAN and JAMES L. ROBERTS, Jr., JJ., concur.
HAWKINS, C.J., concurs with separate written opinion joined by DAN M. LEE and PRATHER, P.JJ., and JAMES L. ROBERTS, Jr. and SMITH, JJ.
SULLIVAN, J. dissents with separate written opinion joined in part by McRAE, J.
BANKS, J., dissents with separate written opinion joined by SULLIVAN, J.
McRAE, J., concurs in part, dissents in part with separate written opinion.
HAWKINS, Chief Justice, specially concurring:
I specially concur with Justice Smith's majority opinion, which in my view enunciates the correct legal test under the United States Supreme Court decisions which we must expound.
The assistant district attorney exercised a peremptory challenge on Lynda Kay Strong, a black, giving as his reason that she was non-attentive, was "giggling" during portions of the voir dire, and "also caused a disturbance with what seemed to be a candy wrapper." The prosecution also, as the dissent notes, claimed she made "very little sense" when she stood up and tried to explain whether or not she knew one of the witnesses in the case. On this last reason the record does not support the assertion.
In Swain v. Alabama, 380 U.S. 202, 212-22, 85 S.Ct. 824, 831-37, 13 L.Ed.2d 759, 768-73 (1965), the Court in a scholarly opinion dwelled at length on the long history of the peremptory challenge and its vital importance to our criminal justice system. The Court went on to observe, however, that a long and consistent history of the State exercising peremptory challenges solely on the basis of race would constitute a violation of the Equal Protection Clause of the Fourteenth Amendment. 380 U.S. at 222-28, 85 S.Ct. at 837-40, 13 L.Ed.2d at 774-77.[1] No such claim could be based, however, on what occurred in a single case.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Court overruled Swain insofar as Swain conditioned *300 an equal protection claim on proof of a persistent and repeated history of the exclusion of blacks by the State. Instead:
To establish such a case, the defendant first must show that he is a member of a cognizable racial group... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those who discriminate who are of a mind to discriminate." ... Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.
Batson, 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87-88 (citations omitted). In deciding whether the defendant had made a requisite showing, the trial court should consider all relevant circumstances:
For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative.
Batson, 476 U.S. at 79, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.
The Court then set out the burden the State had to rebut such presumption:
Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause ... But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption  or his intuitive judgment  that they would be partial to the defendant because of their shared race... . The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions... .
Batson, 476 U.S. at 97-98, 106 S.Ct. at 1723, 90 L.Ed.2d at 88 (citations omitted).
To rebut presumption,
[t]he prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination.
Batson, 476 U.S. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 88-89 (emphasis added) (footnotes omitted).
In footnotes 21 and 22, the majority opinion first noted that the trial judge's finding was entitled to "great deference" on appeal, and did not share Justice Marshall's apprehension that prosecutors and trial judges would not perform conscientiously their duties under the Constitution. Batson, 476 U.S. at 98-99 nn. 21-22, 106 S.Ct. at 1724 nn. 21-22, 90 L.Ed.2d at 89 nn. 21-22.
Justice White, who was the author of Swain, concurred, noting that the practice of eliminating blacks from juries remained widespread despite the warnings of Swain.
Justice Marshall, in a concurring opinion, while agreeing that the case presented an equal protection violation, was of the view the remedy announced by the Court would be ineffective. He would have abolished peremptory challenges entirely:
Any prosecutor can easily assert facially neutral reasons for striking a juror, and trial courts are ill-equipped to second-guess those reasons. How is the court to treat a prosecutor's statement that he struck a juror because the juror had a son about the same age as defendant ... or seemed "uncommunicative," ... or "never cracked a smile" and, therefore "did not possess the sensitivities necessary to realistically look at the issues and decide the *301 facts in this case," ...? If such easily generated explanations are sufficient to discharge the prosecutor's obligation to justify his strikes on nonracial grounds, then the protection erected by the Court today may be illusory.
Batson, 476 U.S. at 106, 106 S.Ct. at 1728, 90 L.Ed.2d at 94 (Marshall, J., concurring) (citations omitted).
Justice Burger, in a dissent joined by Justice Rehnquist, observed: "While our trial judges are `experienced in supervising voir dire,' they have no experience in administering rules like this." Batson, 476 U.S. at 128, 106 S.Ct. at 1739, 90 L.Ed.2d at 108 (Burger, J., dissenting) (citation omitted). In his view, analytically, a peremptory challenge either existed one hundred percent, or not at all. "Analytically, there is no middle ground: A challenge either has to be explained or it does not. It is readily apparent, then, that to permit inquiry into the basis for a peremptory challenge would force `the peremptory challenge [to] collapse into the challenge for cause.'" Batson, 476 U.S. at 127, 106 S.Ct. at 1739, 90 L.Ed.2d at 107-08 (Burger, J., dissenting) (alteration in original) (quoting United States v. Clark, 737 F.2d 679, 682 (7th Cir.1984)).

APPELLATE REVIEW OF CIRCUIT JUDGE'S EVALUATION OF STATE'S REASON FOR PEREMPTORY STRIKE
The basic question here, really, is how important does the U.S. Supreme Court believe the allowance of peremptory challenges is to a fair trial? Other than Justice Marshall, one would have to conclude considerable, because despite the perspicacious misgivings upon which Justice Marshall based his view that peremptory challenges should be abolished altogether, the Court has not done so. Both Chief Justice Burger's dissenting predictions and Justice Marshall's concerns in his concurring opinion have come to pass in abundance. The U.S. Supreme Court has made it clarion clear that the Fifth and Fourteenth Amendments' equal protection right vouchsafed by Batson absolutely prohibits any party to a lawsuit, in the exercise of his peremptory challenge, to acknowledge openly or tacitly that a juror is being excused solely on account of his race, or solely because the party intuitively believes such juror will on account of his race be biased against his case. Some explanation had to be given for exercising the challenge. Batson, 476 U.S. at 97-98, 106 S.Ct. at 1723-24, 90 L.Ed.2d at 88. Thus, in Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), involving a white criminal defendant, when the State gave no reason for peremptorily challenging blacks, the Court reversed. Again, in Edmonson v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), a civil case in which the corporate defendant gave no reason in a United States district court trial for peremptorily challenging blacks on the venire, the Court held that under the equal protection clause of the Fifth Amendment Batson applied and reversed. Most recently, in Georgia v. McCollum, ___ U.S. ___, 112 S.Ct. 2348, 120 L.Ed.2d 33, (1992), the Court held that Batson applied to peremptory challenges exercised by white criminal defendants charged with an assault on blacks, and reversed the Georgia Supreme Court's holding that the defendants in such case need offer no explanation.

THE EXPLANATION
Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). Hernandez, an Hispanic, was on trial for an attempted murder of two other Latinos. Witnesses in the case were going to testify in Spanish. The State exercised two peremptory challenges of Spanish-speaking jurors, expressing the belief they would have difficulty accepting the interpreter's translation. The U.S. Supreme Court affirmed the Court of Appeals of New York's finding there had been no Batson violation.
The U.S. Supreme Court held the principle of Batson applied to Hispanic potential jurors, and the sole question was the adequacy of the reason given by the prosecution for striking the jurors. As in Batson, the majority holding in Hernandez may be more precisely understood by examining the view expressed in the dissent. Justice Stevens, in a dissent joined by Justice Marshall, said the *302 prosecution's explanation was insufficient for three reasons:
First, the justification would inevitably result in a disproportionate disqualification of Spanish-speaking venire-persons. An explanation that is "race-neutral" on its face is nonetheless unacceptable if it is merely a proxy for a discriminatory practice. Second, the prosecutor's concern could easily have been accommodated by less drastic means. As is the practice in many jurisdictions, the jury could have been instructed that the official translation alone is evidence; bilingual jurors could have been instructed to bring to the attention of the judge any disagreements they might have with the translation so that any disputes could be resolved by the court. See, e.g., United States v. Perez, 658 F.2d 654, 662-663 (C.A.9 1981). Third, if the prosecutor's concern was valid and substantiated by the record, it would have supported a challenge for cause. The fact that the prosecutor did not make any such challenge .. . should disqualify him from advancing the concern as a justification for a peremptory challenge.
Hernandez, 500 U.S. at ___, 111 S.Ct. at 1877, 114 L.Ed.2d at 418-19 (Stevens, J., dissenting) (footnote omitted).[2]
The dissent observed:
If any explanation, no matter how insubstantial and no matter how great its disparate impact, could rebut a prima facie inference of discrimination provided only that the explanation itself was not facially discriminatory, "the Equal Protection Clause `would be but a vain and illusory requirement.'"
Hernandez, 500 U.S. at ___, 111 S.Ct. at 1876, 114 L.Ed.2d at 417 (Stevens, J., dissenting) (quoting Batson, 476 U.S. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 88 (quoting Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 584, 79 L.Ed. 1074, 1081 (1935))).
The plurality opinion of Justice Kennedy, joined by Chief Justice Rehnquist, and Justices White and Souter, held the following, however:
In evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law. A court addressing this issue must keep in mind the fundamental principle that "official action will not be held unconstitutional solely because it results in a racially disproportionate impact... . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."... "`Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected ... a particular course of action at least in part `because of,' not merely `in spite of,' its adverse effects upon an identifiable group." ...
A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.
....
Once the prosecutor offers a race-neutral basis for his exercise of peremptory challenges, "[t]he trial court then [has] the duty to determine if the defendant has established purposeful discrimination." Batson v. Kentucky, 476 U.S. at 98, 90 L.Ed.2d 69 [at 88-89], 106 S.Ct. 1712 [at 1724]. While the disproportionate impact on Latinos resulting from the prosecutor's criterion for excluding these jurors does not answer the race-neutrality inquiry, it does have relevance to the trial court's decision on this question. "[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the [classification] bears more heavily on one race than another." Washington v. *303 Davis, 426 U.S. at 242, 48 L.Ed.2d 597 [at 608-609], 96 S.Ct. 2040 [at 2048-2049]. If a prosecutor articulates a basis for a peremptory challenge that results in the disproportionate exclusion of members of a certain race, the trial judge may consider that fact as evidence that the prosecutor's stated reason constitutes a pretext for racial discrimination.
In the context of this trial, the prosecutor's frank admission that his ground for excusing these jurors related to their ability to speak and understand Spanish raised a plausible, though not a necessary, inference that language might be a pretext for what in fact were race-based peremptory challenges. This was not a case where by some rare coincidence a juror happened to speak the same language as a key witness, in a community where few others spoke that tongue. If it were, the explanation that the juror could have undue influence on jury deliberations might be accepted without concern that a racial generalization had come into play. But this trial took place in a community with a substantial Latino population, and petitioner and other interested parties were members of that ethnic group. It would be common knowledge in the locality that a significant percentage of the Latino population speaks fluent Spanish, and that many consider it their preferred language, the one chosen for personal communication, the one selected for speaking with the most precision and power, the one used to define the self.
The trial judge can consider these and other factors when deciding whether a prosecutor intended to discriminate. For example, though petitioner did not suggest the alternative to the trial court here, Spanish-speaking jurors could be permitted to advise the judge in a discreet way of any concerns with the translation during the course of trial. A prosecutor's persistence in the desire to exclude Spanish-speaking jurors despite this measure could be taken into account in determining whether to accept a race-neutral explanation for the challenge.
The trial judge in this case chose to believe the prosecutor's race-neutral explanation for striking the two jurors in question, rejecting petitioner's assertion that the reasons were pretextual. In Batson, we explained that the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal... .
Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in Batson, the finding will "largely turn on evaluation of credibility." 476 U.S. at 98, n. 21, 90 L.Ed.2d 69 [at 89], 106 S.Ct. 1712 [at 1724 n. 21]. In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."
....
... Our cases have indicated that, in the absence of exceptional circumstances, we would defer to state court factual findings, even when those findings relate to a constitutional issue.
....
... We have said that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (Emphasis added; brackets original.)
Hernandez, 500 U.S. at ___, 111 S.Ct. at 1871, 114 L.Ed.2d at 405-12 (Kennedy, J., plurality opinion) (alterations in original) (emphasis added) (citations omitted).
Justice O'Connor, in an opinion joined by Justice Scalia, concurred in the judgment, but wrote separately "because I believe that the plurality opinion goes farther than it needs to in assessing the constitutionality of the prosecutor's asserted justification for his peremptory strikes." Hernandez, 500 U.S. at ___, 111 S.Ct. at 1873, 114 L.Ed.2d at 414.

*304 Batson's requirement of a race-neutral explanation means an explanation other than race.
....
... Absent intentional discrimination violative of the Equal Protection Clause, parties should be free to exercise their peremptory strikes for any reason, or no reason at all. The peremptory challenge is "as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose." ...
....
... But, if, as in this case, the trial court believes the prosecutor's nonracial justification, and that finding is not clearly erroneous, that is the end of the matter. Batson does not require that a prosecutor justify a jury strike at the level of a forcause challenge. It also does not require that the justification be unrelated to race. Batson requires only that the prosecutor's reason for striking a juror not be the juror's race.
Hernandez, 500 U.S. at ___-___, 111 S.Ct. at 1874-75, 114 L.Ed.2d at 415-16 (O'Connor, J., concurring) (first emphasis added) (citation omitted).
The Court in Batson acknowledged "the contribution the [peremptory] challenge generally makes to the administration of justice." Batson 476 U.S. at 98-99, 106 S.Ct. at 1724, 90 L.Ed.2d at 89. Neither Batson nor its progeny have rejected the following observation made in Swain:
Although "[t]here is nothing in the Constitution of the United States which requires the Congress [or the States] to grant peremptory challenges," ... nonetheless the challenge is "one of the most important of the rights secured to the accused,".... The denial or impairment of the right is reversible error without a showing of prejudice... . "For it is, as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose." ...
The function of the challenge is not only to eliminate extremes of partiality on both sides, but to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them, and not otherwise. In this way the peremptory satisfies the rule that "to perform its high function in the best way `justice must satisfy the appearance of justice.'" ... Indeed the very availability of peremptories allows counsel to ascertain the possibility of bias through probing questions on the voir dire and facilitates the exercise of challenges for cause by removing the fear of incurring a juror's hostility through examination and challenge for cause. Although historically the incidence of the prosecutor's challenge has differed from that of the accused, the view in this country has been that the system should guarantee "not only freedom from any bias against the accused, but also from any prejudice against his prosecution. Between him and the state the scales are to be evenly held." Hayes v. Missouri, 120 U.S. 68, 70, 7 S.Ct. 350 [351], 30 L.Ed. 578 [580].
Swain, 380 U.S. at 219-20, 85 S.Ct. at 835, 13 L.Ed.2d at 772 (alteration in original) (citations omitted).[3]
While the United States Supreme Court has made a definite incursion on the exercise of peremptory challenges based solely on race, it is definitely limited as well.
In this case the State made five peremptory challenges against blacks. One the circuit judge held was pretextual, the dissent has concluded the circuit judge was correct in permitting the State to peremptorily challenge three of the remaining four. On only one does the dissent disagree.
In my view a conscientious circuit judge did the best he could. The reason offered by the State was race neutral, and as observed by Justice Marshall in his concurrence in Batson, 476 U.S. at 106-07, 106 S.Ct. at 1728-29, 90 L.Ed.2d at 94, we are not *305 equipped at the appellate level to pass judgment on the merits of the State's explanation. The dissent in the case at hand criticizes the court for failing to make a factual finding, but the circuit judge was hardly able to do so in this case. He may or may not have made the same observation of Strong as the assistant district attorney; it is the trial attorney's task to be acutely observant of every word, motion and nuance of a prospective juror on voir dire.
The point is, the State did give a racially-neutral reason for peremptorily challenging Strong; the circuit judge accepted it. We are not at liberty to disturb this finding unless clearly erroneous. This fully complies with the majority in Batson and Hernandez.
The majority of the members of this Court, at least as presently constituted, share the view of the United States Supreme Court that the peremptory challenge makes a "significant contribution" to the administration of justice in criminal and civil trials. We also believe its abolition would create problems of far greater immensity than those eliminated. A structure centuries in the building should hardly be radically altered, much less demolished, without painstaking study.
I also acknowledge that I share the simple  perhaps some would say naive  view of Justice Powell and the majority of the U.S. Supreme Court in Batson that prosecutors will "fulfill their duty to exercise their challenges only for legitimate purposes," Batson, 476 U.S. at 99 n. 22, 106 S.Ct. at 1724 n. 22, 90 L.Ed.2d at 89 n. 22, and that prosecutors and trial judges will "perform conscientiously their respective duties under the Constitution." Id. They of course know that upon their shoulders rests the responsibility of whether or not peremptory challenges remain a part of our system of justice. I do not believe they will shirk it.
DAN M. LEE and PRATHER, P. JJ., and JAMES L. ROBERTS, Jr. and SMITH, JJ., join this opinion.
SULLIVAN, Justice, dissenting:
I write separately to again point out that the proper solution to all juror problems is to completely abolish the peremptory challenge.
In my view any peremptory challenge is discriminatory and I would abolish the use of peremptory challenges in the trial courts of Mississippi. Davis v. State, 551 So.2d 165, 178 (Miss. 1989) (Sullivan, J., concurring).
If we do not abolish peremptory challenges then we should apply the rule announced today retroactively. See Harper v. Virginia Department of Taxation, 509 U.S. ___, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993).
McRAE, J., concurs in part.
BANKS, Justice, dissenting:
Because I would find that the equal protection rights of the appellant and certain members of the venire were violated under Batson v. Kentucky, 476 U.S. 79, 85-86, 106 S.Ct. 1712, 1716-17, 90 L.Ed.2d 69, 80 (1986) and Carter v. Jury Comm'n of Greene County, 396 U.S. 320, 329-30, 90 S.Ct. 518, 523-24, 24 L.Ed.2d 549, 557-58 (1970), I would reverse Hatten's conviction and remand for a new trial. Accordingly, I dissent.

I.
The State peremptorily struck five blacks. The names and reasons propounded for the strikes follow:
S-1: Venirewoman # 13, Christine Dobbs.

Rebuttal: Venirewoman said her daughter is being represented by Hatten's attorney in an on-going lawsuit.

Response: None from Hatten.

Ruling: Non-pretextual. Venirewoman excused.
S-2: Venireman # 16, Leonard Whitley.

Rebuttal: State "did not like the appearance of Mr. Whitley, felt that he would not be a good juror to hear this case."

Response: Hatten began to respond but was instructed by the trial court that no response was needed.

Ruling: Pretextual. Venireman seated on jury. One alternate removed from jury.
S-3: Venireman # 21, Harry A. Swan.

Rebuttal: State had been informed by local law enforcement that Venireman # 21 had been arrested for bootlegging in the past. As such, "Mr. Swan would probably *306 not be the type of law-abiding citizen in Monroe County that we'd like to see serve as a juror." The State then called a deputy with the Monroe County Sheriff's Department who testified under oath that he apprehended Swan driving into a dry portion of the county with a trunkload of liquor.

Response: Hatten did not have an opportunity to respond to the officer's testimony. Previous to the deputy's testimony, Hatten objected that the State's contention regarding Swan was bootlegging were unsubstantiated.

Ruling: Non-pretextual. Venireman excused.
S-4: Venireman # 22, Lynda Kay Strong.

Rebuttal: Strong was non-attentive and giggling during voir dire. The State alleged Strong "also caused a disturbance with what seemed to be a candy wrapper." Also: "She stood up at one time and tried to explain as to whether or not she knew one of the witnesses; made very little sense. We could not ascertain as to whether or not she did know this person."

Response: "As to Lynda Kay Strong, her being allegedly not attentive and giggling, I didn't observe that, Your Honor. And about her answers, the State had the opportunity to question her, and if they couldn't ask the right question or enough questions to get an answer, then that's their fault."

Ruling: Non-pretextual. Venirewoman excused.
S-5: Venireman # 27, Alonzo Sykes.

Rebuttal: Sykes stated during voir dire that he knew Annie McFarland, the alleged getaway driver in the case. Sykes also stated he knew Lee Anna Walker, another individual who might be called as a witness.

Response: McFarland and Walker may be called by the State as well as the defense. Also, there were other veniremen who knew potential witnesses who were not struck.

Ruling: Non-pretextual. Venireman excused.
Hatten challenges, on appeal, the findings of the trial court regarding the Batson status of Venirewoman # 22 (Linda Kay Strong) and Venireman # 27 (Alonzo Sykes). According to Hatten: "The Court made a finding that the State had properly articulated non-racial reasons for the using of peremptory challenges against these two prospective jurors. The Court made no factual determination as to whether the facts as stated by the assistant district attorney were true and correct or not." Hatten's argument, therefore, is that the veniremen were wrongfully excused as the trial court simply made no factual findings as to the propriety of the State's responses to Hatten's Batson challenges.[1]
The State responds that the trial court need not make a factual determination of whether the reasons offered by the State for striking are pretextual. "All that is necessary is that there exist support in the record for the court's decision."[2] The State contends there is nothing in the record which would indicate that the trial court's ruling was "clearly erroneous or against the overwhelming weight of the evidence." Lockett v. State, 517 So.2d 1346, 1350 (Miss. 1987).
In the instant case, the trial judge offered no factual determination as to the in camera arguments put forth by the prosecution and defense. Indeed, the portion of the jury selection process wherein the State and the appellant peremptorily struck individuals from the venire was not made a part of the record. Instead, the record jumps from the conclusion of the challenges for cause to Hatten's *307 motion for mistrial or, in the alternative, a motion to quash the venire on grounds that the State used five peremptory strikes on blacks in violation of Batson. Examining the record, the following is a verbatim transcription of the State's rebuttal and Hatten's response regarding the peremptory challenge of Strong:
MR. COLEMAN: Your Honor, as to Mrs. Strong the State would argue that she was non-attentive. Mrs. Strong was giggling during portions of the voir dire. She also caused a disturbance with what seemed to be a candy wrapper. She stood up at one time and tried to explain as to whether or not she knew one of the witnesses; made very little sense. We could not ascertain as to whether or not she did know this person.
THE COURT: All right.
Hatten responded as follows:
[BY MR. DOBBS]: As to Lynda Kay Strong, her being allegedly not attentive and giggling, I didn't observe that, Your Honor. And about her answer, the State had the opportunity to question her, and if they couldn't ask the right question or enough questions to get an answer, then that's their fault.
There is no indication in the voir dire transcription that Strong was not attentive or giggling. Also, there is no indication in the voir dire transcription that Strong caused any disruption with a candy wrapper. The entire colloquy between Strong and Prosecutor Geddie follows:
Q. Okay. I have been given the names of two individuals who may possibly testify on behalf of the defendant. The name is Lee Anna Walker. Does anybody know Lee Anna Walker?
A. Lee Ann or Lee?
Q. It's Lee, new word Anna or Lee Ann. Do you know her?
A. It may be a different girl. No.
Q. You're Mrs. 
A. Strong.
THE COURT: Mrs. Strong, please stand up so we can hear you.
A. Ms. Strong.
Q. Ms. Strong, do you know her?
A. No.
Q. This is just so the lady can get it down over here.
Q. Thank you very much.
Judge Russell dispensed with the Batson matters as follows:
THE COURT: All right. The Court finds that the State has properly articulated non-racial reasons for using their challenges against juror Christine Dobbs, juror Harry A. Swan, juror Lynda Kay Strong and juror Alonzo Sykes. However, I don't find there was sufficient reason even though it appeared to be non-racial or could appear to be non-racial. He's black; if they don't like his looks it may be because he is black, and so, therefore, I'm not going to allow the State to challenge juror Leonard McKinley Whitley, Jr. He will be placed on the jury unless the defendant desires to challenge him.

II.
The United States Supreme Court has identified four, distinct grounds where race-based, jury selection is unconstitutional. Barbara Underwood, Ending Race Discrimination in Jury Selection: Whose Right is it Anyway? 92 Colum.L.Rev. 725, 727-28 (1992). First, the criminal defendant maintains a Sixth and Fourteenth Amendment right to a venire representative of a fair cross-section of the community in which he is tried. Duren v. Missouri, 439 U.S. 357, 368 n. 26, 99 S.Ct. 664, 670 n. 26, 58 L.Ed.2d 579, 589 n. 26 (1979); Taylor v. Louisiana, 419 U.S. 522, 530-31, 95 S.Ct. 692, 697-98, 42 L.Ed.2d 690, 698 (1975). Second, the criminal defendant maintains a due process right under the Fourteenth Amendment to challenge the composition of his grand and/or petit jury on the grounds that members of any race were arbitrarily excluded from the jury. Peters v. Kiff, 407 U.S. 493, 504-05, 506-07, 92 S.Ct. 2163, 2169, 33 L.Ed.2d 83, 95-96 (1972). Third, the excluded juror's equal protection right under the Fourteenth Amendment is violated where the venireman is removed from the panel exclusively because of his race. Carter v. Jury Comm'n of Greene County, 396 U.S. 320, 329-30, 90 *308 S.Ct. 518, 523-24, 24 L.Ed.2d 549, 557-78 (1970).[3] Last, the criminal defendant's equal protection guarantee under the Fourteenth Amendment to a jury not purged of members of the defendant's race is abrogated unless the members were removed for race-neutral reasons. Batson v. Kentucky, 476 U.S. 79, 85-86, 106 S.Ct. 1712, 1716-17, 90 L.Ed.2d 69, 80 (1986). By challenging the strike of Strong, Hatten invokes the third and fourth ground.
Batson made clear that the trial court has a duty to determine whether the State has offered a race-neutral reason for peremptorily striking a venireman. Benson v. State, 551 So.2d 188, 192 (Miss. 1989); Lockett v. State, 517 So.2d 1346, 1349 (Miss. 1987). Repeatedly, this Court has held it will reverse the trial court's findings on Batson challenges only when "they appear clearly erroneous or against the overwhelming weight of the evidence." Willie v. State, 585 So.2d 660, 672 (Miss. 1991); Benson v. State, 551 So.2d at 192; Davis v. State, 551 So.2d 165, 171 (1989); cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 797 (1990); Chisolm v. State, 529 So.2d 630, 633 (Miss. 1988); Johnson v. State, 529 So.2d 577, 583-84 (Miss. 1988); Lockett, 517 So.2d at 1350.
This Court has never addressed the question of whether a trial judge must make an on-the-record factual determination evaluating the merits of the State's "race-neutral" reasoning for striking veniremen. Other appellate courts have mandated such a determination. United States v. Gordon, 817 F.2d 1538, 1541 (11th Cir.1987) (even if U.S. offers "race neutral" explanations, trial court must make independent inquiry into the pretextuality of challenges) vacated in part on other grounds, 836 F.2d 1312 (11th Cir.1988) cert. dismissed 487 U.S. 1265, 109 S.Ct. 28, 101 L.Ed.2d 979 (1988); Roger v. State, 593 So.2d 141, 142 (Ala. Crim. App. 1991) cert. denied (Ala. 1992) (where trial judge fails to inquire, but merely accepts purported race-neutral explanation of State for striking black veniremen, a prima facie case of discrimination is established); Colbert v. State, 801 S.W.2d 643, 646 (Ark. 1990) (while the standard of review shall be limited to whether the court's findings are clearly against a preponderance of the evidence, "in every instance ... the court shall state, in response to the defendant's objections, its ruling as to the sufficiency or insufficiency of the racially neutral explanation provided by the state"); Slappy v. State, 503 So.2d 350, 355-56 (Fla. Dist. Ct. App. 1987), aff'd. 522 So.2d 18 (Fla. 1988) cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988) (trial court must evaluate proffered explanation in light of Batson "to make a reasoned determination that the prosecutor's facially innocuous explanations are not contrived to avoid admitted acts of group discrimination"); State v. Collier, 553 So.2d 815, 820 (La. 1989) ("[a]fter the prosecutor has presented reasons for his use of a peremptory challenge which on their face are racially neutral, an issue of fact is joined, and the trial court must assess the weight and credibility of the explanation in order to determine whether there was purposeful discrimination in the use of the challenge"); Stanley v. State, 313 Md. 50, 542 A.2d 1267, 1280-81 (1988) (explicitly adopts holding of Slappy as the law in Maryland regarding proper disposition of Batson challenges); Commonwealth v. Mathews, 31 Mass. App. Ct. 564, 581 N.E.2d 1304, 1308 (1991) review denied, 411 Mass. 1105, 586 N.E.2d 10 (1991) (trial judge should make findings regarding whether defendant made a prima facie showing of impropriety under Batson and, if so, the judge "should then proceed to determine the sufficiency of any justification advanced for the exercise of the challenge"); State v. Antwine, 743 S.W.2d 51, 64 (Mo. 1987) cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988) (Batson "requires the trial court to consider the State's explanation of the manner in which it employed its challenges prior to making a final determination *309 as to whether a prima facie case exists")[4]; Miller-El v. State, 790 S.W.2d 351, 356 (Tex. Ct. App. 1990) ("[t]he trial judge must examine each of the prosecutor's reasons for striking a potential African-American juror within the circumstances of the particular case to determine whether the State gave a `neutral explanation' for a strike as a pretext for a racially motivated peremptory challenge.") (citation deleted); Jackson v. Virginia, 8 Va. App. 176, 380 S.E.2d 1, 5-6 (1989) aff'd en banc 9 Va. App. 169, 384 S.E.2d 343, 344 (1989) (explicitly adopts the holding of Slappy as the law in Virginia for proper disposition of Batson challenges); cf. People v. Hall, 35 Cal.3d 161, 197 Cal. Rptr. 71, 74-76, 672 P.2d 854, 857-58 (1983) (as a matter of state constitutional law, it is imperative on the trial court to provide an on-the-record "sincere and reasoned attempt to evaluate the prosecutor's explanations in light of the circumstances as then known"); People v. Turner, 42 Cal.3d 711, 230 Cal. Rptr. 656, 726 P.2d 102 (1986) (the failure of a trial court to apply Hall merely compounds error); People v. Fuentes, 54 Cal.3d 707, 286 Cal. Rptr. 792, 798-799, 818 P.2d 75, 81-82 (1991) (trial judge's evaluation must discuss whatever "race neutral" reasons are propounded by the State and determine whether those reasons are "bona fide" or a "sham").
I find the arguments of these courts persuasive and would hold that the trial court must make an on-the-record evaluation regarding the merits of the State's race-neutral reasons for striking a venireman peremptorily. In the instant case, it appears that the trial court did just that. Its rejection of one challenge because the reasons given were not sufficiently amenable to objective determination indicates strongly that it considered and evaluated all of the reasons proffered.

III.
We are still confronted with the problem that Strong's alleged demeanor was not made part of the record.
Hatten responded to allegations made by the State regarding Strong's demeanor, stating he did not observe Strong to be inattentive or disorderly during voir dire and that if the State was dissatisfied or confused with the answers given by Strong during voir dire, Hatten offered the State could have questioned her in more detail.
With this in mind, this Court is presented with a second issue of first impression: where a defendant disputes the factual basis of a race-neutral explanation offered by the State in rebuttal to a Batson challenge, must the trial court make a record and finding on that issue? More specifically, when the defendant disputes the allegation made by the State, and the allegation cannot be demonstrated or disproven by turning to the record, does the trial court have a duty to go on-the-record with a finding?
Other appellate courts that have treated this issue have determined race-neutral reasons, where not determined by the trial judge to have existed must, at bare minimum, have been made a part of the record if the conviction is to survive scrutiny. United States v. Sherrills, 929 F.2d 393, 395 (8th Cir.1991) (inattentiveness may not be pretextual where venireman incorrectly responded to question, however "[d]etermining who is and who is not attentive requires subjective judgments that are particularly susceptible to the kind of abuse prohibited by Batson. ... These factors make the district court's observations particularly crucial. We believe a prosecutor's explanation of challenges on the grounds of inattentiveness deserves careful scrutiny by the district court, and special care by counsel to fully develop the record concerning the specific behavior by venire members motivating counsel to make a peremptory challenge based on inattentiveness."); *310 Madison v. State, 545 So.2d 94, 97, 99 (Ala.Cr.App. 1987), cert. denied, 545 So.2d 94 (Ala. 1989) (inattention, disinterest and body language considered to be inappropriate demeanor by the State but unsubstantiated by the record shows "a lack of proper examination of such jurors [and] leaves this court no alternative but to reverse and remand this cause for a new trial because of the explanations given by the district attorney"); Williams v. State, 547 So.2d 179, 180 (Fla.App.Ct. 1989) (where State challenges black veniremen for being inattentive, that rationale will be deemed pretextual unless the State's rationale is either an uncontested matter of fact made part of the record or is supported by observations made by the trial judge in the record); Chew v. State, 317 Md. 233, 562 A.2d 1270, 1277-78 (1989) (where State advances an explanation that has not been made a part of the record  such as the demeanor of a venireman  the defendant contests the State's explanations, and the trial court makes no findings regarding the explanations, reversal under Batson required); C.E.J. v. State, 788 S.W.2d 849, 858 (Tex. App.Ct. 1990) (alleged lack of eye contact and inattentiveness "not objectively verifiable under this record" is pretextual under Batson).
As I understand the majority, it adopts a rule requiring such a finding, but applies it prospectively. Majority opinion, ante p. 301-302. I find no justification for this procedure. I would adhere the expressions of the United States Supreme Court in Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) where that court abandoned, even its "clear break" rule with respect to prospective application of constitutional rulings in criminal cases. 479 U.S. at 326-27, 107 S.Ct. at 715-16.

IV.
One final issue requires discussion. We are presented with a record wherein one of the State's peremptory strikes was determined to be pre-textual. As stated above, the State attempted to strike Whitley as the prosecutor "did not like the appearance of Mr. Whitley, felt that he would not be a good juror to hear this case." As a result, venireman Leonard Whitley was seated. Although we have never addressed the issue, several appellate courts have held the legitimacy of all of the State's peremptory strikes comes into question when one of the State's explanations is found to be pretextual. United States v. Chinchilla, 874 F.2d 695, 699 (9th Cir.1989) (where some reasons were, in fact, race neutral and others were not, judicial scrutiny militates against the sufficiency of all peremptory strikes wherein a prima facie Batson claim was raised); Ex Parte Bird, 594 So.2d 676, 683-84 (Ala. 1991) (State's failure to articulate legitimate reason for striking one juror exposed rationale for remaining strikes to greater scrutiny than had the illegitimate reason not been uttered); Gamble v. The State, 257 Ga. 325, 357 S.E.2d 792, 795 (1987) (persuasiveness of proffered explanation may be magnified or diminished by the persuasiveness of remaining explanations); cf. Moore v. State, 811 S.W.2d 197, 200 (Tex. Ct. App. 1991) (a racially motivated explanation "vitiates the legitimacy of the entire [jury selection] procedure" such that the use of a peremptory challenge to eliminate a venireman based, in part, on a rationale violating Batson invalidates conviction and a new trial is mandated).
In line with these courts, a finding by the trial court that one (or more) of the State's explanations for a peremptory strike is pretextual requires greater scrutiny of the remaining explanations.

V.
We pause to note that the trial judge made an effort to perform the inquiry required by Batson and its progeny. It is likely that the failure to make a record or finding resolving the factual issue of inattentiveness was a mere oversight. There are important rights at stake, however, and I deem it inappropriate under the circumstances to remand for findings based on the memory of the parties. This Court has held that discriminatory use of a peremptory challenge requires reversal. Conerly v. State, 544 So.2d 1370, 1372-73 (Miss. 1989). I would reverse Hatten's conviction and remand the case to the Monroe County Circuit Court for new trial.
SULLIVAN, J., joins this dissent.
*311 McRAE, Justice, concurring in part/dissenting in part:
I concur with the majority opinion to affirm. However, I join Justice Sullivan's opinion in stating that this matter should not apply prospectively but should be retroactive pursuant to Harper v. Virginia Department of Taxation, 509 U.S. ___, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993).
NOTES
[1] Amendment 14, § 1 U.S. Constitution, provides in part: "No state shall ... deny to any person within its jurisdiction the equal protection of the laws."
[2] Neither of the first two reasons expressed by Justice Stevens is present here, and it is doubtful if the State in this case could have justified a challenge for cause on the basis of what the assistant district attorney told the circuit judge he had observed about Strong.
[3] The only member of the United States Supreme Court who has advocated the abolition of peremptory challenges altogether has been Justice Marshall. That his view is an isolated one is emphasized by the fact that the Court since Batson has had repeated opportunities to go beyond its holding there, but has not done so.
[1] Upon review of the record, Hatten's Batson claim as it relates to Sykes is meritless. The voir dire transcription clearly indicates that Sykes believed he knew McFarland and Walker, each a potential witness for Hatten. Of all of the veniremen who responded they knew a potential witness, only one was seated  Vincent Deavens. It stands to reason, as Deavens knew a witness for the State and not for the appellant, that if any party was going to strike Deavens, it would have been Hatten. Therefore, Hatten's supposition that Sykes was struck pretextually based on the simple fact that the State did not strike Deavens cannot stand. The State would, presumptively at least, have had no reason to strike Deavens and, on the other hand, had good reason to strike Sykes.
[2] Appellee's brief at 16.
[3] This proposition was explicitly reaffirmed in Batson v. Kentucky, 476 U.S. 79, 87-88, 106 S.Ct. 1712, 1718, 90 L.Ed.2d 69, 81-82. Specifically:

The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice. Batson, 476 U.S. at 87, [106 S.Ct. at 1718] 90 L.Ed.2d at 81. (Citations omitted).
[4] The Missouri Supreme Court's analysis of the complications Batson presents trial court judges and the solution to these complications is particularly insightful:

The trial judge's task is extremely difficult. One doubts that a prosecutor will admit that his decision to challenge a particular member of the venire was based upon race. The court is left with determining from the totality of circumstances whether an articulated neutral explanation is but an excuse for improper discrimination. Batson thus requires the trial judge to embrace a participatory role in voir dire, noting the subtle nuance of both verbal and nonverbal communication from each member of the venire and from the prosecutor himself. Antwine, 743 S.W.2d at 64.