854 So.2d 17 (2003)
Edward Stafford KNIGHT, Sr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01255-COA.
Court of Appeals of Mississippi.
April 1, 2003.
Rehearing Denied June 24, 2003.
Certiorari Denied September 4, 2003.
*19 Anthony L. Farese, David Lee Robinson, Ashland, attorneys for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
EN BANC.
LEE, J., for the court.

PROCEDURAL HISTORY
¶ 1. In July 2001, Edward Knight was tried before a Calhoun County jury on change of venue from Union County, on charges of murder and aggravated assault. He was convicted on both counts and sentenced to serve life in prison for the murder conviction and sentenced to serve twenty years in prison for the aggravated assault charge, with five years suspended and fifteen years to serve, the sentences to run concurrently. Knight's motion for judgment notwithstanding the verdict or in the alternative a new trial was denied, and he now appeals to this Court raising the following issues: Did the judge err (1) in failing to grant Knight's motions for mistrial; (2) in failing to grant Knight's motion for new trial due to prejudicial comments the prosecutor made during closing argument; (3) in allowing the State to use peremptory strikes against jurors based on race; (4) in failing to grant Knight's motion for judgment notwithstanding the verdict due to insufficiency of the evidence; and (5) was the cumulative effect of errors sufficient to warrant reversal? We review each of these issues and find no error; thus, we affirm.

FACTS
¶ 2. Edward Knight worked for Piper Industries (Piper) in New Albany. During his tenure at Piper, Knight challenged those in authority and encouraged others who were disgruntled with the Piper management to speak out. On May 30, 2000, Knight, no longer employed at Piper, received unfavorable news from the unemployment office. Thereafter, he went to visit two of his Piper superiors, Paul Ferguson and Tom Jones, to find out why they told the unemployment office Knight had refused to accept the work offered to him at Piper. When Knight entered the room where Ferguson and Jones were waiting, Knight told the men he was mad at them for lying to the unemployment office, then he pulled out a gun and shot both men, killing Ferguson and wounding Jones. At trial, Knight pled insanity and offered experts and witnesses from his workplace to show that he was mentally unstable.

DISCUSSION

I. DID THE JUDGE ERR IN FAILING TO GRANT KNIGHT'S MOTIONS FOR MISTRIAL?
¶ 3. Knight argues in two separate discussions that his motions for mistrial should have been granted. The applicable standard of review for denial of a motion for mistrial and for reviewing discovery violations is abuse of discretion. Spann v. State, 771 So.2d 883(¶ 9) (Miss.2000); Graves v. State, 767 So.2d 1049(¶ 6) (Miss. Ct.App.2000).

a. Motion for mistrialdiscovery violations
¶ 4. Knight first claims that the State improperly allowed New Albany Police *20 Chief David Grisham to testify about a statement Knight made to him which had not been disclosed in discovery. During interrogation, Officer Grisham and Investigator Tim Kent talked with Knight, who refused to sign a written statement reflecting the oral statement he gave to the officers. At trial, Officer Grisham testified that he asked Knight why he shot the men, and Knight replied, "It was just something I had to do." When asked how he felt at that point after the shootings, Knight stated, "Well, I don't have any feelings for Paul Ferguson." Knight argues that these statements were not disclosed during discovery, and, thus, were inadmissible as he was not able to have his experts prepare a rebuttal.
¶ 5. Officer Grisham was called as a rebuttal witness, and Knight moved for a mistrial twice during Grisham's testimony. At a bench conference during Grisham's testimony, Knight's attorney stipulated that the prosecutor had told him that Officer Grisham was going to testify that Knight offered no remorse after the shooting. Knight argues that, while this is true, he did not know Grisham would testify that Knight stated he did not have any feelings for Paul Ferguson, which would be a motive for the shooting. This Court fails to see how these two statements differ materially. Thus, we find no error, since Knight was aware of and stipulated to the introduction of Officer Grisham's testimony prior to his taking the stand. The trial judge did not abuse his discretion, and this point is without merit.

b. Motion for mistrialreference to race
¶ 6. Knight also moved for a mistrial during the prosecutor's closing argument. We adhere to our previously stated standard of review in determining whether the trial judge abused his discretion in declining to grant the motion.
¶ 7. Anthony Robinson, Knight's former co-worker, testified in Knight's defense. During cross-examination, the prosecutor asked, "You know in all these statements that he talks about when he's talking to other people, he refers to you as that little black guy. Did you know that?" Knight immediately objected to the form of the question, moved to strike and moved for a mistrial. The court responded by sustaining the objection and asking the jury to disregard the question.
"It is presumed that the jury follows the instructions of the trial court." We have repeatedly held that where the trial court sustains an objection to the inadmissible testimony of a witness and instructs the jury to disregard same, prejudicial error does not result from that improper testimony. "[W]here an objection to such impermissible testimony is sustained and the jury is admonished by the trial court to disregard the statement, this Court has repeatedly held that refusal to grant a mistrial is proper."
Baldwin v. State, 784 So.2d 148(¶ 31) (Miss.2001) (citations omitted).
¶ 8. Mississippi forbids the State from in the "remotest degree" prejudicing the jury against a defendant on account of race, or indeed any other invidious prejudice. Tate v. State, 784 So.2d 208(¶ 33) (Miss.2001). In recalling Knight's description of Robinson as "a little black guy," the prosecution was referring to reports from psychiatrist Dr. Gerald O'Brien who had penned Knight's precise words in his reports. However, the prosecutor may have overstepped his bounds in choosing to use these words in his examination. Regardless, pursuant to the above-stated rule from Baldwin, the judge took the necessary corrective measures, and he did not *21 abuse his discretion in failing to grant a mistrial.

II. DID THE JUDGE ERR IN FAILING TO GRANT KNIGHT'S MOTION FOR NEW TRIAL DUE TO PREJUDICIAL COMMENTS THE PROSECUTOR MADE DURING CLOSING ARGUMENT?
¶ 9. Knight argues that the judge erred in declining to grant his motion for new trial; however, we find this issue barred from our review. Knight contemporaneously objected at the time the prosecutor made the objectionable comments in his closing argument, and the judge sustained, admonishing the jury to disregard the statements. However, Knight failed to ask for a mistrial at that point, which bars him on appeal from requesting our review. "[T]he Mississippi Supreme Court has held `in order to take advantage of improper argument on the part of a prosecuting attorney, objection must be interposed at the time the statement is made, and the point will not be considered on appeal unless motion for a mistrial is timely made.'" Logan v. State, 773 So.2d 338(¶ 45) (Miss.2000) (citations omitted) (emphasis added).

III. DID THE JUDGE ERR IN ALLOWING THE STATE TO USE PEREMPTORY STRIKES AGAINST BLACK JURORS?
¶ 10. Next, Knight argues that the judge erred in allowing the State to use peremptory strikes against jurors based on their race. Having reviewed the entirety of the record concerning challenges for cause and peremptory challenges, we find the judge in no way found a pattern of discrimination based on race.
¶ 11. From the dialogue with the attorneys, it may be inferred that the judge and attorneys were unclear as to what point in the process they were to conduct the Batson hearing, so the judge opted to pause along the way, giving the parties opportunity to object as questions arose. Midway through the process, the judge did state that, in his opinion, the defendant had not made out a prima facie case that a pattern of racial discrimination existed, and then later in the peremptory challenge segment, he permitted the State to offer race-neutral reasons. Although the judge's thought processes might be unclear, nonetheless, in overruling and sustaining various challenges, we find considerable evidence that the judge even-handedly reviewed each and every challenge on the record and ruled accordingly. Knight argues that the State used eight of its eleven peremptory challenges, as well as a ninth challenge for the alternate, to remove African American members of the venire, and the reasons for such removal were not sufficiently race-neutral. The defendant and victims in this case are white, and we note the Supreme Court's decision in Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), which reduced the three traditional Batson requirements to essentially only one.[1] Currently, the only requirement is that the opponent of the strike has met the burden of showing that the proponent has engaged in a pattern of strikes based on race or gender, *22 or in other words "the totality of the relevant facts gives rise to an inference of discriminatory purpose." See Puckett v. State, 788 So.2d 752(¶ 10) (Miss.2001).
When a Batson issue arises, the trial judge acts as the finder of fact. The race neutral explanations must be viewed in the light most favorable to the trial court's findings. Trust is placed in a trial judge to determine whether a discriminatory motive drives the reasons given for striking a potential juror. The determination of discriminatory intent will likely turn on a trial judge's evaluation of a presenter's credibility and whether an explanation should be believed. Thus, trial courts are given great deference in their findings of fact surrounding a Batson challenge. One of the reasons the trial court is afforded such deference when a Batson challenge is raised is because the demeanor of the attorney making the challenge is often the best evidence on the issue of race neutrality. On appellate review, the trial court's decision is accorded great deference and will be reversed only when such decision is clearly erroneous.
Walker v. State, 815 So.2d 1209(¶ 12) (Miss.2002) (citations omitted).
¶ 12. Knight lists eight jurors he claims were challenged based on race, and he claims six of those eight were struck for reasons that were not sufficiently race-neutral. According to our standard of review, we can only reverse the trial court if we find clear error. The State gave detailed reasons on the record for striking each of these jurors. Although we might find question with some reasons, we defer to the trial judge absent clear error, since he was present and able to determine credibility, evaluate demeanor, and best determine in light of the circumstances the attorney's motives and the juror's qualifications. Here, no clear error has been shown; thus, we affirm on this issue.

VI. DID THE JUDGE ERR IN FAILING TO GRANT KNIGHT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT DUE TO INSUFFICIENCY OF THE EVIDENCE?
¶ 13. Knight argues the evidence was not sufficient to support the verdict, and his motion for judgment notwithstanding the verdict or, in the alternative, a new trial should have been granted. We look to our requisite standard of review:
In considering the sufficiency of the evidence supporting the verdict, this Court will consider all of the evidence in the light most favorable to the verdict. Credible evidence which is consistent with the guilty verdict must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. This Court may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
Scott v. State, 829 So.2d 688(¶ 10) (Miss.Ct. App.2002).
¶ 14. Knight argues that the State did not prove that he acted with "deliberate design" or "malice aforethought" as are necessary to support a murder conviction. At the trial, both sides presented several witnesses, including various experts who had examined Knight's mental status and co-workers and family who testified concerning the same. Substantial evidence was presented, much of it conflicting, and the jury was privy to all of this evidence. "The issue of a defendant's *23 sanity is an issue for the jury to determine, and its finding will not be reversed if it is supported by substantial evidence. It is in the jury's discretion to accept or reject any expert testimony." Woodham v. State, 779 So.2d 158(¶ 29) (Miss.2001) (citations omitted). In giving the State reasonable inferences as may be drawn from the evidence, we find sufficient evidence to support the jury's verdict.

V. WAS THE CUMULATIVE EFFECT OF THE PROSECUTORIAL MISCONDUCT SUFFICIENT TO WARRANT REVERSAL?
¶ 15. Knight finally argues that, as described in the issues raised on appeal and looking to the overall cumulative error, the case must be reversed for a new, fair trial. "This Court may reverse a conviction and sentence based upon the cumulative effect of errors that independently would not require reversal. However, where `there was no reversible error in any part, so there is no reversible error to the whole.'" Coleman v. State, 697 So.2d 777, 787 (Miss.1997) (citations omitted). Having found no error with Knight's other issues, we find no merit to this final issue.
¶ 16. THE JUDGMENT OF THE CALHOUN COUNTY CIRCUIT COURT ON CHANGE OF VENUE FROM THE UNION COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, MURDER AND SENTENCE OF LIFE; COUNT II, AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS WITH FIVE YEARS SUSPENDED AND FIFTEEN YEARS TO SERVE, SAID SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
SOUTHWICK, P.J., THOMAS, MYERS AND GRIFFIS, JJ., CONCUR. BRIDGES, J., DISSENTS WITH A SEPARATE WRITTEN OPINION JOINED BY KING, P.J., IRVING AND CHANDLER, JJ. MCMILLIN, C.J., NOT PARTICIPATING.
BRIDGES, J., Dissenting:
¶ 17. With respect to my colleagues in the majority, I would remand this case to the Circuit Court of Union County for appropriate findings, concluding that the trial court erred in failing to make an on-the-record, factual determination of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors as mandated in Hatten.
¶ 18. Knight assigns as error the court's ruling that Knight had not made out a prima facie case of racial discrimination during jury selection sufficient for a Batson hearing. "Under Batson, a defendant must show that (1) he is a member of a cognizable racial group; (2) that the prosecutor exercised peremptory challenges to excuse a venire person of the defendant's race; and (3) that there is an inference that the venire persons were excluded on account of their race." Mack v. State, 650 So.2d 1289, 1296 (Miss.1994). "In sum, these components constitute the prima facie showing of discrimination necessary to compel the state to come forward with a neutral explanation for challenging black jurors." Lockett v. State, 517 So.2d 1346, 1349 (Miss.1987). The United States Supreme Court held in Powers that a white defendant had standing to challenge the prosecution's use of its peremptory strikes to remove black venire members. Powers v. Ohio, 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Consequently, Knight does not have to show that he is a member of a cognizable racial group to establish a prima facie case of discrimination. Id. The burden then shifts *24 to the State to come forward with a race-neutral explanation for challenging the jurors. Id. However, the State's explanation is not required to rise to the level of justification as required for a challenge for cause. Harper v. State, 635 So.2d 864, 867 (Miss.1994).
¶ 19. Additionally, the Mississippi Supreme Court decided, in Hatten v. State, that it was necessary that "trial courts make an on-the-record, factual determination, of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors." Hatten v. State, 628 So.2d 294, 298 (Miss.1993). When these findings are made, the "guesswork surrounding the trial court's ruling is eliminated upon appeal of a Batson issue to this Court." Id.
¶ 20. In the proceeding below, the State exercised eight of its eleven peremptory challenges against black veniremen. Determining whether there lies a racially discriminatory motive under the State's articulated reasons is left to the sole discretion of the trial judge. Lockett, 517 So.2d at 1350. Moreover, "a trial judge's factual findings relative to a prosecutor's use of peremptory challenges on minority persons are to be accorded great deference and will not be reversed unless they appear to be clearly erroneous or against the overwhelming weight of the evidence." Id.
¶ 21. I find that the majority is correct in that there seemed to be some confusion about the process of conducting a Batson hearing. The court initially held that Knight had not made out a prima facie case of racial discrimination sufficient to require a Batson hearing, but once the State continued to strike black jurors, the court began to seek racially neutral explanations for those peremptory strikes. Although the State did give reasons for the challenges, the court failed to make an on-the-record, factual determination of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors. At the very most, the trial court stated on-the-record that it was of the "opinion that the State had stated race and gender neutral reasons." Again, after around the third Batson challenge, the court stated only that it was of the opinion that there is a valid race neutral challenge. The court continually stated only that it was of the opinion that "that would be race neutral if that were correct" and the court "finds that is a race neutral reason." On or around the fifth Batson challenge, the State asserted as one of its reason for the strike against juror number 50, Westmoreland, was that she has "four kids, no spouse and a junior high education." This reasoning seems to lean more towards being pretextual than race neutral. And last but not least, the court failed to make any finding on the last Batson challenge, challenging Everlean Stovall. I find that the trial court failed to make any on-the-record, factual determination of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors prescribed by Hatten.
¶ 22. I cannot divine the meaning of the trial court's actions from the record before us; either there was a prima facie case of racial discrimination, or there was not. An argument can be made for both propositions from the record. Additionally, the State's facially race-neutral reasons were either accepted, or they were not, but from the record it is impossible to tell.
¶ 23. Accordingly, I would remand this case to the Circuit Court of Union County for appropriate findings, concluding that the trial court erred in failing to make an on-the-record, factual determination of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors as mandated in Hatten.
*25 KING, P.J., IRVING AND CHANDLER, JJ., JOIN THIS SEPARATE OPINION.
NOTES
[1] Traditionally, according to Batson v. Kentucky, 476 U.S. 79, 80, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to establish a prima facie case of purposeful racial discrimination in the exercise of peremptory challenges, the opponent of the strike was required to show:

1. That he is a member of a "cognizable racial group;"
2. That the proponent has exercised peremptory challenges toward the elimination of veniremen of his race; and
3. That facts and circumstances raised an inference that the proponent used his peremptory challenges for the purpose of striking minorities.