# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01241-SCT

*KATHY BURNETT AND PHILLIP BURNETT*

*v.*

*DR. LORI FULTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/23/2000 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JOHN F. HAWKINS |
| | STEVEN MARK WANN |
| ATTORNEYS FOR APPELLEE: | JIMMY B. WILKINS |
| | MILDRED M. MORRIS |
| | SUSAN LATHAM STEFFEY |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 09/18/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The genesis of the case at bar arises from a suit filed in the Circuit Court of Hinds County by Kathy and Phillip Burnett against Dr. Lori Fulton alleging medical malpractice. The jury found for Dr. Fulton. On appeal, the Burnetts raise the issue of improper peremptory challenges by Dr. Fulton. We affirm the decision of the learned trial judge who found all the jurors strikes to be race neutral.

## FACTS

¶2.     On October 3, 1997, Kathy and Phillip Burnett filed a medical malpractice action against Dr. Lori Fulton in the Circuit Court of the First Judicial District of Hinds County.   A jury trial began on March 13, 2000. At the conclusion of voir dire, counsel for Dr. Fulton exercised all four of her peremptory challenges to strike African Americans from the jury panel.   The Burnetts made a **Batson** challenge, and Dr. Fulton responded appearing to give race neutral reasons for the strikes.

¶3.     Counsel for Dr. Fulton stated the following reasons, to which counsel for the Burnetts made no rebuttal:

> As to Juror No. 6, . . . Cavett, she didn't laugh at any of Mr. Wilkins comments.  She looked away the entire time he was in *voir dire*.  She frowned at several comments he made and several questions he asked her.  Her body language was inappropriate.   She has limited education and we have a complicated case.
>
> Our next challenge was to . . . Ransom who was completely unengaged. She looked down during Mr. Wilkins *voir dire,* did not make any eye contact whatsoever with him, and we have excused Ms. Ransom.
>
> Ms. Myrick is 29 years old.  That's exactly the same age that Ms. Burnett was when she began to see Dr. Fulton for a period of approximately four years. She is going to relate to that time period in life.  She also frowned, refused to make eye contact, and appeared to have her eyes closed during part of the *voir dire*.
>
> Ms. Thigpen absolutely was asleep during the first part of the *voir dire*. She actually paid more attention to Mr. Wilkins than to Mr. Hawkins, but she had her eyes closed and at one point totally nodded off and shook when she woke up. She was completely inattentive.  She also could not remember the results of her civil case and was not particularly interested in the judicial process.  And, for the record, we have accepted a number of African-American Jurors including African-American women.

2

¶4.    Dr. Fulton then raised a ***Batson*** challenge to the Burnetts' strikes, and the Burnett's counsel articulated race-neutral reasons for having used all strikes against Caucasians. Of the jurors struck by the Burnetts' counsel, one knew Dr. Fulton and had worshiped at the same church, one was an acquaintance of a senior partner in defense counsel's firm, and one was, Mr. Barranco, a pharmacist and thus a member of the health care profession who was openly hostile toward both sides during voir dire. Defense counsel indicated that this strike was not a surprise. These strikes are not, however, at issue in this appeal.

¶5.    Upon considering the justifications given by both parties, the trial judge made the following observations with regard to the exercise of the strikes:

> The Court: I'm going to allow all of the challenges to stand. I am troubled by some of the reasons that have been given for some of the strikes, and this provides me with another opportunity to give my new [definition] of *voir dire,* and I hope that's not what's occurring in this case. But more and more and more *voir dire* is an exercise in finding race neutral reasons to justify racially motivated strikes. And that's what I'm seeing more and more and more to the point that I'm almost ready to decide that there will be no *voir dire* other than an introduction of the parties and the litigants and we can just bring the jurors in and let the lawyers pick what their race is and decide who they want to strike, because more and more and more I'm having cases where plaintiff lawyers, no matter what a juror says, they're going to strike all the white people that they can strike, and defense lawyers are going to strike all the black people that they can strike...So having given my speech again because I'm just tired of seeing it. . .I'm letting your strikes stand just as you made them and I'm letting their strikes stand just as you made them. Bring in the jury.

¶6.    Although the judge allowed the reasons to stand, he did not make "specific explanation" on the record. The selected jury returned a verdict in favor of Dr. Fulton. The sole issue on

3

appeal is whether this case must be reversed in light of Dr. Fulton's peremptory challenges and the judge's ruling to let them stand.

## STANDARD OF REVIEW

¶7.  A trial court's determinations regarding *Batson* challenges are afforded great deference because they are, in large part, based on credibility. *McGilberry v. State,* 741 So.2d 894, 923 (Miss. 1999) (citing *Coleman v. State,* 697 So.2d 777, 785 (Miss. 1997)).  This deference given to the trial judge is due because the trial judge is present during voir dire and is in a better position to measure the prospective jurors' responses. *Venton v. Beckham*, 845 So. 2d 676, 679 (Miss. 2003); *Smith v. State*, 802 So.2d 82, 86 (Miss. 2001); *Wells v. State*, 698 So.2d 497, 501 (Miss. 1997).  Therefore, a trial court's findings are to be given the utmost consideration on appeal, and this Court will reverse only where the decision is clearly erroneous or against the overwhelming weight of the evidence. *Gary v. State*, 760 So.2d 743, 749 (Miss. 2000); *Randall v. State,* 716 So.2d 584, 587 (Miss. 1998); *Collins v. State,* 691 So.2d 918, 926 (Miss. 1997).  Recently, the United States Supreme Court restated its earlier plurality holding that

> in the context of direct review, therefore, we have noted that "the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact fo the sort accorded great deference on appeal" and will not be overturned unless clearly erroneous.

*Miller-El v. Cockrell*, 537 U.S. 322, __, 123 S.Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (quoting *Hernandez v. New York*, 500 U.S. 352, 364-65, 111 S.Ct. 1859, 114 L. Ed. 2d 395 (1991)).

4

A.      **WHETHER DR. FULTON'S PEREMPTORY STRIKES WERE RACE-BASED AND THEREFORE A VIOLATION OF *BATSON v. KENTUCKY*, 476 U.S. 79 (1986)?**

¶8.      Pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) the proper analysis for a peremptory challenge violation has been set forth by this Court in numerous cases.  *See Berry v. State*, 728 So.2d 568, 572 (Miss. 1999); *Randall*, 716 So.2d at 585; *McFarland v. State*, 707 So.2d 166, 171-72 (Miss. 1997).  We follow the decision made by the United States Supreme Court in  *Miller-El*, 537 U.S. at __, 123 S.Ct. at 1035, holding the *Batson* requirements to be as follows:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. 476 U.S., at 96-97, 106 S.Ct. 1712. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Id., at 97-98, 106 S.Ct. 1712. Third, in light of the parties' submissions, the trial court **must determine whether the defendant has shown purposeful discrimination**. Id., at 98, 106 S.Ct. 1712.

(emphasis added).

¶9.      Here, the Burnetts challenged Dr. Fulton's use of all four of her peremptory strikes against prospective African-American jurors.  It is of no consequence whether the Burnetts established a *Batson* prima facie case, as the trial court required Dr. Fulton to provide race-neutral reasons for her challenges.  Because Dr. Fulton offered explanations for her challenges, the elements of whether the Burnetts established a prima facie case and whether

Dr. Fulton should be required to give race-neutral reasons for her challenges are immaterial. *Mack v. State,* 650 So.2d 1289, 1297 (Miss. 1994) (citing *Hernandez,* 500 U.S. at 352-54).

¶10.    The striking party is not required to "provide the same degree of justification for a peremptory challenge as is required for a challenge for cause." *Bush v. State*, 585 So.2d 1262, 1268 (Miss. 1991).  Inattentiveness, demeanor, sleeping during voir dire, lack of eye contact, educational level and hostility (the reasons cited by Dr. Fulton) have all been held by this Court to be race neutral reasons in keeping with *Batson*.  *Mack*, 650 So.2d at 1299; *Harper v. State*, 635 So.2d 864, 868 (Miss. 1994); *Lockett v. State*, 517 So.2d 1346, 1356-67 (Miss. 1987).

¶11.    Once the striking party has submitted race-neutral reasons for its peremptory challenges, the opposing party has a chance to rebut the proffered reasons. *Gary v. State*, 760 So.2d at 743; *Chisolm v. State*, 529 So.2d 635, 638 (Miss. 1988).  The Burnetts did not rebut the race neutral reasons given by Dr. Fulton.  This Court has previously held that a lack of response to the striking party's race-neutral reasons makes it improper for the Court to reverse on this point. *Davis v. State*, 551 So.2d 165, 172 (Miss. 1989).  In the instant case, the Burnetts did not rebut with a specific argument, such as pretext, in order to supplement their general *Batson* challenge.  Therefore, this argument is waived. *Mack*, 650 So.2d at 1297.  The Burnetts were not required to rebut, but by offering no other arguments regarding the peremptory strikes, they forced the trial court to base its decision solely upon  the reasons given by Dr. Fulton. *Gary*, 760 So. 2d at 743; *Johnson v. State*, 529 So.2d 577, 584 (Miss. 1988).

6

¶12.    In *Hatten v. State*, 628 So.2d 294 (Miss. 1993)*,* this Court held that trial court judges should make on-the-record factual determinations of race-neutral reasons in cases involving *Batson* challenges.  *Id*. at 298.  In making our decision, we remarked that the trial judge in *Hatten* "did not merely accept the specific reasons given by the prosecution at face value, but considered whether they were contrived." *Id*. at 299.  *Hatten* does not dictate absolute truth in the reason tendered.  It only asks that there be enough basis in fact to permit the court to make a reasonable judgment that it is not contrived.

¶13.    Here, Dr. Fulton also challenged the makeup of the jury selection process by challenging the Burnetts regarding their striking all Caucasians.  While it is true that Dr. Fulton did indeed challenge four African-American jurors peremptorily, it remains also true that Dr. Fulton accepted a number of African-American jurors including some African-American women.  Thus, the Burnetts have not shown a systematic pattern nor even an isolated striking of jurors in a racially discriminatory manner.

¶14.    We need first examine the reasons given by Dr. Fulton for striking the jurors in question.  As to juror Cavett, she looked away the entire time defense counsel was in voir dire, she frowned, used inappropriate body language and, more importantly, as noted by defense counsel, "**she had limited education and we have a complicated case.**"  Juror Ransom was completely unengaged during voir dire, showed no sign of actively participating in the process, and failed to make eye contact. Juror Myrick was 29 years old, the exact same age of plaintiff Ms. Burnett when she first sought care from Dr. Fulton.  Defense counsel was concerned that

"**she is going to relate to that time period in life**." She frowned, refused to make eye contact and at one point, appeared to have her eyes closed and was sleeping. Juror Thigpen was absolutely asleep during the first part of voir dire, was inattentive and more importantly, she "**could not remember the results of a prior civil case in which she had served as a juror.**" Defense counsel was concerned that she was uninterested in the judicial process.

¶15.    This Court must consider the overall context of the reasons given for peremptory strikes.  Every reason cited by Dr. Fulton has been upheld by this Court as being a valid race-neutral reason for a peremptory challenge to a juror. *Woodward v. State*, 726 So. 2d 524, 531 (Miss. 1997) (juror seen as hostile to a party); *Mack v. State*, 650 So. 2d at 1299 (inattentiveness, sleeping, yawns as a race neutral factor); *Harper v. State*, 635 So. 2d 864, 868 (Miss. 1994) (lack of eye contact); *Griffin v State*, 607 So. 2d 1197, 1202-03 (Miss. 1992) (juror sleeping);  *Bolton v. State*, 752 So. 2d 480, 483 (Miss. Ct. App. 1999) (citing *Lockett v. State*, 517 So. at 1349 (focusing of educational background as a basis for juror challenge).

¶16.    A trial judge's decision  regarding peremptory challenges is a factual finding and will not be reversed unless it is clearly erroneous or against the overwhelming weight of the evidence. *McGilberry v. State*, 741 So. 2d at 923.   As this Court has stated,

> "A circuit judge has wide discretion in determining whether to excuse any prospective juror, including one challenged for cause. The circuit judge has an absolute duty, however, to see that the jury selected to try any case is fair, impartial and competent." *Ill. Cent. R.R. v. Hawkins*, 830 So.2d 1162, 1176 (Miss.2002). See also *Brown ex rel. Webb v. Blackwood*, 697 So.2d 763, 769 (Miss.1997); *Poe v. State*, 739 So.2d 405, 409 (Miss.Ct.App.1999) (the trial

8

court has wide latitude in deciding whether to excuse a potential juror, including an exclusion for cause).

*Venton v. Beckham*, 845 So. 2d at 679. There need only be race-neutral explanations given for striking a juror. *Hernandez*, 500 U.S. at 358-59, 111 S.Ct. at 1866. Dr. Fulton unquestionably gave race-neutral reasons for striking the jurors in issue. Most critical in considering the case at bar is the fact that the Burnetts did not rebut these reasons in spite of the fact that they were clearly given that opportunity to do so as required by case law. *Gary v. State*, 760 So. 2d at 743; *Chisolm v. State*, 529 So. 2d at 638. Accordingly, the Court need analyze only the reasons given by the defendant. *Harper v. State*, 635 So. 2d at 867. We have held that when this occurs the issue is waived. *Mack v. State*, 650 So. 2d at 1297. Finally, we have also held that it is improper for the Court to reverse on this point when there is a lack of response to a striking party's race-neutral reasons. *Davis v. State*, 551 So. 2d at 172. Here, the trial judge could only rely on the statements by Dr. Fulton's counsel. The trial court, despite some concerns, decided the strikes were allowable. The trial court's reservations were obviously based upon both sides striking jurors of their respective races which was most concerning to the court. However, great deference is accorded to the trial judge in determining whether the offered explanation is truly a race-neutral reason. *Walters v. State*, 720 So.2d 856, 865 (Miss. 1998). Here, Judge Graves is to be afforded such great deference after truly giving this matter his utmost attention. He ultimately determined to allow both sides' strikes to stand as based on valid race-neutral reasons. By allowing Dr. Fulton's peremptory challenges to stand given the unrebutted racially neutral reasons articulated by Dr. Fulton, the trial court

necessarily concluded that the Burnetts failed to prove that Dr. Fulton's peremptory challenges were racially discriminatory. The trial judge need only have submitted to the court a basis in fact so as to permit a reasonable judgment to be made that the reason is not contrived. *Hatten v. State*, 628 So. 2d at 299. We will not substitute our judgment for that of the trial judge. This Court has stated:

> [W]here a trial judge fails to elucidate such a specific explanation for each race neutral reason given, we will not remand the case for that *Batson*-related purpose alone. This Court is fully capable of balancing the *Batson* factors in cases such as this one. Continued remand of such cases only wastes the trial court's limited resources and acts to further delay justice.

*Gary v. State*, 760 So. 2d at 748. The trial judge was not required to state on the record "specific explanations" for accepting race-neutral reasons for striking a juror. *Id.* The trial judge was obviously frustrated by peremptory strikes following along racial lines made by both parties. However, even in expressing his frustration, Judge Graves impliedly acknowledged that race-neutral reasons *were* found (by both sides): "*voir dire* (has become) an exercise in finding race-neutral reasons to justify racially motivated strikes." The trial judge made a thoughtful, lengthy and sincere effort to properly weigh and examine the reasons offered by both parties. Although the trial court was troubled by a continuing pattern of strikes along racial lines, he clearly believed the reasons stated by Dr. Fulton were not contrived. The trial court's expression of irritation does not mean that it did not consider the rationales for striking the potential jury members. In fact, here, just the opposite occurred. We hold that there were rational race-neutral reasons given by Dr. Fulton and accepted by the trial court for striking

10

each juror. Overturning a case under these circumstances is exactly the waste of judicial resources that *Gary* states it is essential and necessary to avoid. The learned trial judge was not clearly erroneous nor was his decision against the overwhelming weight of the evidence. In fact, just the opposite is true. We therefore affirm the trial court.

## CONCLUSION

¶17.    The main issue is whether Dr. Fulton used her peremptory challenges in a racially discriminatory manner. *Sudduth v. State*, 562 So.2d 67, 71 (Miss. 1990). The trial court held that the strikes cited by Dr. Fulton were not racially motivated but were in fact race neutral and thus allowable. We agree and affirm the trial court's judgment.

¶18.    **AFFIRMED**.

**PITTMAN, C.J., WALLER, COBB AND CARLSON, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.    DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶19.    This case should be remanded for further findings with regard to Dr. Fulton's use of peremptory strikes since the trial judge did not make specific findings as to the validity or invalidity of the challenges.   Remand is the only proper disposition since the inferences of racial discrimination have not yet been resolved. For these reasons, I dissent.

¶20.    As the majority has already pointed out, *Batson* requires that:

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race . . . . Second, if the requisite showing is made, the burden shifts to the prosecutor to articulate a

11

race-neutral explanation for striking the jurors in question . . . . Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Hernandez v. New York*, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)

(citing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). *See also*

*Berry v. State*, 728 So.2d 568, 572 (Miss. 1999); *Randall v. State*, 716 So.2d 584, 586-90

(Miss. 1998); *McFarland v. State*, 707 So.2d 166, 171-72 (Miss. 1997).

¶21.    It is of no consequence that Dr. Fulton offered race-neutral reasons for the peremptory

strikes. Likewise, it is immaterial that the Burnetts failed to rebut the race-neutral reasons

stated by Dr. Fulton.  The turning point of the proceedings and the deciding factor which

warrants remand is the trial judge's failure to make a specific finding concerning whether the

strikes were in fact valid and race-neutral.

¶22.    In *Hatten v. State*, 628 So.2d 294, 298 (Miss. 1993), we held that the trial judge must

make on the record factual determinations of race-neutral reasons in cases involving *Batson*

challenges. How are we to review the trial judge's findings of fact regarding the proposed race-

neutral reasons when no specific findings are made?  Here, the trial judge simply voiced a

"generalized acceptance" of all of the strikes made. The fact that the race-neutral reasons given

by the parties in this case caused the judge to comment on the use of racially motivated strikes

combined with his "generalized acceptance" of all of the strikes leaves the record unclear as

to the actual motivation for his decision.

¶23. Based on the record, the requirements of *Batson* have not been fulfilled. Further proceedings are necessary for the trial court to make specific findings of fact with regard to the proposed race-neutral reasons offered by Dr. Fulton. For the above stated reasons, I dissent.