# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-KA-01733-SCT

*JEREMY DALE DAVIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/24/2005 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JEREMY DALE DAVIS (PRO SE) |
| | THOMAS M. BRAHAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/18/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1. Jeremy Davis was convicted of aggravated assault on a law-enforcement officer, escape, burglary of a dwelling, and possession of a firearm by a felon. On appeal, his attorney filed a brief under ***Lindsey v. State***,[1] and this Court ordered additional briefing on

---

[1] In ***Lindsey v. State***, this Court set forth various procedures with which an attorney must comply when he or she represents an indigent criminal defendant and asserts there are no arguable issues for appellate consideration. ***Lindsey v. State***, 939 So. 2d 743, 748 (Miss. 2005).

the defendant's ***Batson***[2] challenges. Davis and his attorney each filed briefs in which they provided only generalized assertions that the State had violated the Equal Protection Clause by exercising all six of its peremptory strikes against African-American jurors. After reviewing these briefs and the record, we find no error and uphold the trial court's denial of each ***Batson*** challenge.

**FACTS**

¶2.     At trial, Davis asserted that the State had engaged in a pattern and practice of excluding African-American jurors by using all six of its peremptory strikes to remove African Americans. In response, the State argued that it had tendered five African-American jurors, one of whom the defendant had struck, three who were on the petit jury, and one who was an alternate.[3] The trial court found no prima facie showing of discrimination, but it permitted the State to offer its explanations for the strikes. The court specifically ruled:

> I do not believe that the defense has made a prima facie showing of . . . or pattern of the State excluding black jurors. However, if you would like to make a record on the ones you did exclude, I will be glad to hear those reasons. I will leave that up to you.

After the trial court's ruling on the prima facie prong, the defendant offered no rebuttal. The trial court ruled the State had provided race-neutral reasons for the exclusion of the six jurors, but did not make an on-the-record finding as to each challenge. The trial court provided the following explanation of its ruling on the ***Batson*** challenges:

> Again, the Court finds that the defendant failed to establish a prima facie pattern on behalf of the State in excluding black jurors. However, even

---

[2]***Batson v. Kentucky***, 476 U.S. 79, 85-86, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[3]The record does not show the racial composition of the panels or the petit jury.

assuming a prima facie showing was made by the defendant, the State has given racially-neutral reasons for the exclusion – for the exclusion of black jurors. A copy of the Juror information Sheet for Juror No. 10, Angelo Jo – or rather, Edward Anthony Nickson, Juror No. 10, will be made part of this record for the purpose, sole purpose, of this hearing.

## DISCUSSION

¶3. In *Batson v. Kentucky*, the United States Supreme Court found that the Equal Protection Clause prohibits a party from exercising peremptory strikes based on race.[4] This protection extends to the striking of even one juror on account of race.[5] A *Batson* challenge has three steps:

> (1) the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose; (2) once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible, race-neutral justifications for the strikes; and (3) if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination.[6]

¶4. Once the State offers a race-neutral explanation and the trial court rules on the ultimate question of purposeful discrimination, the question of whether the defendant made a prima facie showing becomes moot.[7] In this case, the trial court ruled on the ultimate question of purposeful racial discrimination, even though it initially found the defendant had

---

[4]*Batson*, 476 U.S. at 85-86. *Batson* has been extended to cover other protected classifications as well as challenges brought by the prosecution. *Pitchford v. State*, 45 So. 3d 216, 225 n.8 (Miss. 2010).

[5]*Snyder v. Louisiana*, 552 U.S. 472, 478, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008).

[6]*Pruitt v. State*, 986 So. 2d 940, 942-43 (Miss. 2008) (citing *Johnson v. California*, 545 U.S. 162, 168, 125 S. Ct. 1240, 2416, 162 L. Ed. 2d 129, 138 (2005)).

[7]*Estate of Jones v. Phillips*, 992 So. 2d 1131, 1143 (Miss. 2008).

failed to make a prima-facie case of discrimination. We will limit our analysis to the second and third steps of *Batson*.

¶5.	Under the second step of *Batson*, the State must offer a race-neutral reason for the strike.[8] A race-neutral reason does not have to be "persuasive, or even plausible; so long as the reasons are not inherently discriminatory."[9] In considering the State's reasons, the trial court necessarily must evaluate the prosecutor's demeanor, as this will be the best evidence of discriminatory intent.[10]

¶6.	In response to the race-neutral reason, the defendant "must be given an opportunity to rebut the reasons offered by the proponent"[11] to show the reasons actually are pretextual. This Court has held the following can be evidence of pretext:

> (1) disparate treatment, that is, the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge; (2) the failure to voir dire as to the characteristic cited; . . . (3) the characteristic cited is unrelated to the facts of the case; (4) lack of record support for the stated reason; and (5) group-based traits.[12]

If the defendant fails to rebut the proffered reasons, the trial court must base its decision on the reasons given by the State.[13] As the movant, the defendant has the ultimate burden to

---

[8]*Chamberlin v. State*, 989 So. 2d 320, 337 (Miss. 2008).

[9]*Id.*

[10]*Snyder*, 552 U.S. at 477.

[11]*Estate of Jones*, 992 So. 2d at 1144.

[12]*Pruitt*, 986 So. 2d at 944.

[13]*Pitchford v. State*, 45 So. 3d 216, 227 (Miss. 2010).

4

establish racial discrimination and must ensure that the appellate record supports its contention of reversible error.[14]

¶7.     This Court reviews the trial court's *Batson* ruling "with great deference" and will not reverse unless it is "clearly erroneous or against the overwhelming weight of the evidence."[15] While the trial court *should* make on-the-record determinations of race-neutral reasons, this Court will not necessarily reverse and remand for its failure to do so.[16] "[W]here a trial judge fails to elucidate such a specific explanation for each race neutral reason given, we will not remand the case for that *Batson*-related purpose alone.  This Court is fully capable of balancing the *Batson* factors in cases[.]"[17]  However, the United States Supreme Court has held that when a party offers *two* race-neutral reasons for a peremptory strike, *one of which is based on demeanor*, the record must support one of the reasons if the trial court denies the challenge without making an on-the-record determination.[18]  Otherwise, the appellate court is unable to discern whether the trial court credited the demeanor-based reason.[19]  However, the Supreme Court subsequently rejected the argument that *Snyder* requires the trial court

_____

[14]*See Stewart v. State*, 662 So. 2d 552, 559 (Miss. 1995).

[15]*Estate of Jones*, 992 So. 2d at 1144.

[16]*Burnett v. Fulton*, 854 So. 2d 1010, 1016 (Miss. 2003) (quoting *Gary v. State*, 760 So. 2d 743, 748 (Miss. 2000)).

[17]*Gary*, 760 So. 2d at 748.

[18]*Snyder*, 552 U.S. at 479, 485.

[19]*Id.*

to reject a demeanor-based explanation for a peremptory challenge when the court failed to personally observe or recall the juror's demeanor.[20] It also noted that:

> where the explanation for a peremptory challenge is based on a prospective juror's demeanor, the judge should take into account ["'all possible explanatory factors'" and] any observations of the juror that the judge was able to make during the *voir dire*. But ***Batson*** plainly did not go further and hold that a demeanor-based explanation must be rejected if the judge did not observe or cannot recall the juror's demeanor.[21]

¶8.    With these standards in mind, we turn to the State's arguments before the trial court in support of its peremptory strikes.

***Batson Challenges***

*Leotis Randle Hubbard*

¶9.    The State argued that it had tried to strike Hubbard for cause, since it recently had prosecuted Hubbard's granddaughter. The State further argued that, when it had asked the potential jurors during voir dire whether any family member had been prosecuted by the State, Hubbard had failed to respond. Hubbard responded in the affirmative only after the State specifically had questioned Hubbard about her granddaughter's case. The State argued that Hubbard had lied by omission by failing to volunteer that her granddaughter recently had been prosecuted.

*Edward Anthony Nickson*

¶10.    The State argued that Nickson had failed to fill out his jury questionnaire appropriately. The trial judge made the questionnaire an exhibit to the record. For name,

---

[20] ***Thayler v. Haynes***, 130 S. Ct. 1171, 1174, 175 L. Ed. 2d 1003 (2010).

[21] ***Id.*** (quoting ***Batson***, 476 U.S. at 95).

Nickson had listed "Nickson A. Nickson" and had left his birth date blank. He also had marked "married" but had failed to list his spouse. He had listed his employer's name as "Townhouse" but had failed to list his occupation. The State also stated that this juror had seemed "goofy" and "odd."

*Jacqueline Sharp McMillan*

¶11. The State asserted that a number of law-enforcement officers had helped it pick the jury, and that the dispatcher of the Aberdeen Police Department was "pretty certain" that some of McMillan's family members had been arrested by the Aberdeen police.

*Patrick G. Lockett*

¶12. The State argued that Lockett seemed "hostile" and refused to make eye-contact.

*Lois Ann Taylor*

¶13. The State asserted that it had not even realized that Taylor was African American, but it had struck her because an officer had informed it that Taylor's husband had "pretty severe problems" and had been arrested a number of times.

*Rachel Marie Moore*

¶14. The State argued that it had learned Moore's brother had been involved in a police shooting.

**Analysis of Batson Challenges**

¶15. While not necessarily dispositive,[22] each of the State's reasons has been upheld by this

---

[22]***Pruitt***, 986 So. 2d at 945 (cautioning that reasons found to be race-neutral in one case do not automatically render them race-neutral in any other case).

Court as being race-neutral.[23]  However, the trial court failed to make on-the-record determinations as to each challenge, and the State offered demeanor-based reasons for striking two jurors, Lockett and Nickson.  So we must determine whether the requirements of *Snyder* have been violated.

¶16.   While the State offered a demeanor-based reason as one of two explanations for striking Juror Nickson, the trial judge himself included the incomplete jury questionnaire as part of the record.  Therefore, the record supports the nondemeanor-based, race-neutral reason for Juror Nickson's exclusion.  Furthermore, the State offered only a demeanor-based reason for its strike of Juror Lockett, so the trial court must have credited this race-neutral reason.  In accord with *Snyder*, the record supports the race-neutral reasons offered by the State for its strike of Jurors Lockett and Nickson.

¶17.   Furthermore, "[t]his Court must consider the overall context of the reasons given for peremptory strikes."[24]  Davis failed to meet *his burden* of proof and persuasion before the trial court and this Court.  The record contains no evidence regarding the racial composition of the jury panels or the petit jury that could help determine whether the State's reasons were actually pretextual.  And Davis failed to offer any rebuttal to the State's proffered reasons

---

[23]*Gary v. State*, 760 So. 2d 743, 749 (Miss. 2000) (failure to complete jury questionnaire and failure to disclose information); *Magee v. State*, 720 So. 2d 186, 188-89 (Miss. 1998) (family member charged or convicted with a crime); *Woodward v. State*, 726 So. 2d 524, 531 (Miss. 1997) (demeanor-based reason of hostility); *Harper v. State*, 635 So. 2d 864, 868 (Miss. 1994) (demeanor-based reason of lack of eye-contact).

[24]*Burnett v. Fulton*, 854 So. 2d 1010, 1015 (Miss. 2003).

for striking the six jurors. We find nothing in the record which demonstrates that the trial court erred in accepting the State's race-neutral reasons for striking each juror.[25]

**CONCLUSION**

¶18. We uphold the trial court's denial of Davis's **Batson** challenges. Its **Batson** ruling was not clearly erroneous or against the overwhelming weight of the evidence. Therefore, Davis's conviction and sentence are affirmed.

¶19. **COUNT I: CONVICTION OF AGGRAVATED ASSAULT ON A POLICE OFFICER AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AS A HABITUAL OFFENDER, AND PAYMENT OF A FINE OF $5,000.00, AFFIRMED. COUNT II: CONVICTION OF ESCAPE AND SENTENCE OF ONE (1) YEAR IN THE CUSTODY OF THE MONROE COUNTY SHERIFF, AFFIRMED. COUNT III: CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A FINE OF $10,000.00, AFFIRMED. COUNT IV: CONVICTION OF POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A FINE OF $5,000.00, AFFIRMED. SENTENCES IN COUNTS I, III AND IV SHALL NOT BE REDUCED OR SUSPENDED AND SHALL BE WITHOUT THE POSSIBILITY OF PAROLE OR PROBATION. ALL SENTENCES SHALL RUN CONSECUTIVELY.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH AND PIERCE, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ.**

**KING, JUSTICE, DISSENTING:**

¶20. With appropriate respect for the majority, I am compelled to dissent.

---

[25]***Pitchford v. State***, 45 So. 3d 216, 228 n.17 (Miss. 2010) (noting that trial court reviews totality of circumstances, but this does not include those circumstances, facts, and arguments that the defendant fails to assert).

¶21.   In ***Batson v. Kentucky***, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the Supreme Court held that the exercise of peremptory challenges against prospective jurors based upon race was constitutionally prohibited discrimination and violated a defendant's right to a fair trial.  Previously, the Supreme Court had held that all qualified persons are entitled to serve as jurors, and that exclusion from jury service based upon race was a denial of equal protection.  ***Strauder v. West Virginia***, 100 U.S. 303, 10 Otto 303, 25 L. Ed. 664 (1879) (abrogated on other grounds by ***Taylor v. Louisiana***, 419 U.S. 522, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975)).

¶22.   I believe that these two legal principles are interrelated and of necessity must be considered together when considering the jury-selection process.

¶23.   A criminal defendant, acting through counsel or acting pro se, has the right to raise an objection if he believes that the State has engaged in prohibited discrimination in the jury-selection process.  Davis questioned the State's use of peremptory challenges against Blacks. The State offered what are described as facially race-neutral reasons for the exercise of its peremptory challenges.  One of the State's strikes was exercised against an individual who was said to have inappropriately completed the juror-information card, and who was described as "goofy" and "odd."  No standard was articulated in the record by which to measure "goofy" or "odd."  A second strike was used against a prospective juror, Patrick Lockett, who was described as seemingly hostile and refusing to make eye-contact.  The record contained no articulation of any specific seemingly hostile actions by this person. Nor, I would note, is there any requirement that a prospective juror make or maintain eye-contact with counsel.

10

¶24. Compounding the failure of the prosecution to articulate specific instances of the complained-of demeanor of prospective jurors is the failure of the trial court to review these matters independently and make appropriate on-the-record findings. As the Supreme Court noted in **Snyder**, "In addition, race-neutral reasons for peremptory challenges often invoke a juror's demeanor (e.g. nervousness, inattention) making the trial court's first-hand observations of even greater importance. In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." **Snyder v. Louisiana**, 552 U.S. 472, 477, 128 S. Ct. 1203, 1208, 170 L. Ed. 2d 175 (2008).

¶25. Where the reasons for the strike involve either the demeanor of the attorney or the prospective juror, this Court cannot make that determination from the cold record. **Id.** at 479 (stating that "nervousness cannot be shown from a cold transcript"); **Gary v. State**, 760 So. 2d 743, 758 (¶56) (Banks, P.J., dissenting) (Miss. 2000). Instead, it must rely upon the on-the-record findings of the trial judge. Where the record contains no such findings, this Court should either remand for a **Batson** hearing or reverse for a new trial. **Id.** (citing **Puckett v. State**, 737 So. 2d 322, 337 (¶¶36-38) (Miss. 1999)). The record before this Court contains no such findings by the trial court.

¶26. Additionally, the full, stated reason for striking Lockett appears to be contradictory. The contradictions in the stated reasons for excluding Lockett should have, at the least, required the trial judge to view them independently and address on the record the question of pretext. The full statement by the prosecutor was:

11

Juror No. 18, Patrick G. Lockett, Ms. Emerson related to me upstairs, actually, I – when we were in discussions regarding making the first tender to Mr. Brahan, Mr. Lockett looked very good on paper, and I liked him just – he didn't respond to any questions during voir dire, but I liked him from his form, and when I suggested that we tender him, Ms. Emerson had a concern, I believe, because she – essentially what she said was she picked up a bad vibe from him. She thought he seemed hostile in the way he was looking at her, responding to her, and she was – she attempted during voir dire to make eye contact with him. There were times when – and the Court has done voir dire a lot more times then anybody else in here has. There are times when you are doing voir dire and you essentially try to make contact with some jurors. You ask a question, you know, can everyone do that, can you follow the law as the judge gives it to you, what have you, and you basically have them nodding, and you are attempting to get eye contact. She continually attempted to do so with Mr. Lockett and was never able to do so, and that's essentially what turned the wheels the other way in regards to Mr. Lockett. He was going to be tendered before . . . essentially before Ms. Emerson related her concerns.

While it is true that, in some cases, this Court can review the cold trial court record and balance the ***Batson*** factors, that is not true in every case, and the prosecutor's statements should not be embraced by this Court as an immutable article of faith.

¶27. By way of example, despite having read the voir dire several times, I have seen absolutely nothing in that record which validates the supposedly facially race-neutral reasons for excluding Patrick Lockett. Nothing in the record establishes that Lockett responded to Emerson in a hostile way. Nothing in the record establishes that Lockett refused to make eye-contact with Emerson. Nothing in the record establishes that Emerson continually attempted to make eye-contact with Lockett and he refused.

¶28. That these matters were not established is made clear by the statement of Emerson's co-counsel Joyner, who despite being present in the courtroom and fully participating in the process, was totally unaware of the occurrence of any of these claimed actions by Lockett.

12

Indeed, Joyner stated that he had desired to have Lockett on the jury until Emerson said that "she picked up a bad vibe from him."

¶29. Where no on-the-record review on the question of pretext is conducted, these types of reasons, "goofy," "odd," "seemed hostile," and failure to make eye-contact are an open invitation to engage in discriminatory conduct. Where this Court seemingly, mechanically approves such action, it places its imprimatur on that invitation to engage in discriminatory conduct.

¶30. The defendant, as happens all too often, raised the issue of *Batson*, but failed to question in any meaningful manner the supposedly race-neutral reasons offered by the State. However, the defendant's failure should not serve as an excuse for the failure of the trial court to honor its responsibility to ensure that all parties to a judicial proceeding, including prospective jurors, are treated fairly. Although, as in this case, where the supposedly race-neutral reasons are matters of demeanor, there is little if any rebuttal that the defendant can offer. Indeed, in matters of demeanor, the only real issue is whether or not the trial judge observed the same conduct.

¶31. To allow the trial court to seemingly pay only lip service to its *Batson* obligation denies equal protection to the second party who has been victimized by impermissible discrimination, that is the prospective juror, who has been wrongfully excluded. *Carter v. Jury Comm'n of Greene County*, 396 U.S. 320, 329, 90 S. Ct. 518, 523, 24 L. Ed. 2d 549 (1970) (holding that "[p]eople excluded from juries because of their race are as much aggrieved as those indicted and tried by juries chosen under a system of racial exclusion"). The defendant can object to the State's actions. However, the prospective juror who has

13

been wrongfully discriminated against has no right to object in that proceeding. But even worse, not being a part of the selection process, he generally will be unaware that the State discriminated against him. That person's only line of protection from impermissible discrimination in the jury-selection process is the watchful eye of the trial judge, seeking to independently determine whether the proffered reasons are actually a pretext for impermissible discrimination.

¶32. When the prima facie requirement is satisfied under *Batson*, I would, without exception, mandate an on-the-record review by the trial judge for pretext, without regard to whether the defendant rebuts the State's reasons.

¶33. Where, as in this case, the reasons given are matters of demeanor, which cannot be observed in the appellate record, and the trial court has failed to make an on-the-record review for pretext, this Court should reverse and remand for a new trial.

¶34. Accordingly, I dissent and would reverse and remand.

**KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION**.