¶ 26. Because the trial court erred in overruling Pruitt's Batson challenge with respect to two African-American prospective jurors and committed reversible error by not making an on-the-record factual determination of whether the State's proffered reasons were non-pretextual, I dissent.
 ¶ 27. The State's race-neutral reasons for striking Juror Number 14, Mary Louise McMillan, were that she had a history of short-term employment and that she was related to individuals who had *Page 948 
been prosecuted. Regarding the State's first reason for striking McMillan, two indicia of pretext are present in the record. First, the State accepted two white jurors who indicated on their juror cards that they had been employed by their present employer for six weeks and one year, respectively, but struck McMillan, who indicated on her juror card that she had been employed by her present employer for six months. Mack v. State, 650 So.2d 1289, 1298
(Miss. 1994) (stating that "presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge" is an indicium of pretext). Second, the State did not ask McMillan any questions about her employment history. Id. (stating that "failure to voir dire as to the characteristic cited" is an indicium of pretext). Because there were unchallenged jurors of the opposite race who had also been employed for a short period of time, and the State failed to conduct voir dire as to this reason, I find that this reason was pretextual.
 ¶ 28. As for the State's second reason for striking McMillan, there are also two indicia of pretext. First, the State did not question McMillan about her alleged relationship with individuals who had allegedly been prosecuted. Second, the record reflects that the State obtained this information about McMillan from a law enforcement officer; the assistant district attorney stated that he had "concerns via Officer Shumpert, that [McMillan] [wa]s related to persons that have been prosecuted."
 ¶ 29. The State also struck Juror Number 2, Tracy Lagrone, because the prosecutor had been told by a law enforcement officer that she was possibly related to an individual who had been prosecuted by the same district attorney's office. The State's explanation of the reason for striking Lagrone was as follows:
 Tracy Lagrone, once again, one of the law enforcement officers expressed concern that she is related to one of our supervisors here whose son we have prosecuted in the very recent past. . . . In any event, the reason that we made that strike was because of concern that she was related to the supervisor whose son we had prosecuted.
Despite having "concerns" about McMillan and Lagrone being related to individuals who had been prosecuted, the State never directly asked McMillan or Lagrone during voir dire whether they were related to such individuals.[5] Accordingly, the State failed to conduct voir dire as to McMillan's and Lagrone's alleged relationships to these unidentified individuals who had allegedly been prosecuted. SeeMack, 650 So.2d at 1298 ("The failure to voirdire usually comes into play when the prosecutor expresses some suspicion or uncertainty about the true situation involving the juror, such as when he `believes' that the juror is related to a criminal."). "`[T]he State's failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination.'"Miller-El v. Dretke, 545 U.S. 231, 246,125 S.Ct. 2317, 2328, 162 L.Ed.2d 196 (2005) (quoting Ex parteTravis, 776 So.2d 874, 881 (Ala. 2000)). Moreover, there is no support in the record for this supposedly race-neutral reason. Accordingly, the State's "failure to conduct voir dire [and the lack of record support] must weigh against the state in an evaluation of whether this reason for using a peremptory *Page 949 
strike against McMillan and Lagrone was a pretext for racial discrimination. Mack, 650 So.2d at 1298.
 ¶ 30. Of course, these two indicia of pretext must be "viewed . . . in light of the relative strength of the prima facie case of discrimination." Id. Even though Pruitt's prima facie case is not strong, I conclude that the trial court clearly erred in overruling Pruitt'sBatson challenges to the strikes of McMillan and Lagrone. The State did not examine McMillan or Lagrone about their alleged relationships to individuals who had allegedly been prosecuted, give them an opportunity to respond to these allegations, or produce any evidence of such relationships. Moreover, the State did not provide this information to Pruitt's attorney prior to or during voir dire, which prevented his attorney from evaluating the veracity of these allegations. The cumulative effect of all of this necessitates a finding that the trial court's ruling that this explanation for the strikes of McMillan and Lagrone was not a pretext for racial discrimination was Batson error. See Howell v.State, 860 So.2d 704, 766-68 (Miss. 2003) (Graves, J., dissenting).[6] Accordingly, the trial court committed clear error in overruling Pruitt's Batson challenge with respect to McMillan and Lagrone.
 ¶ 31. The trial court also committed reversible error, in my judgment, by not making any factual findings regarding the race-neutral reasons proffered by the State for striking McMillan and Lagrone. This Court has held that when considering a Batson challenge, a trial court must "make an on-the-record, factual determination, of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors." Hatten v. State,628 So.2d 294, 298 (Miss. 1993). The trial court must also "give . . . [a] `clear and reasonably specific' explanation for [its] ruling."Id. at 299. "Mere broad conclusions at the end of theBatson process will not suffice." Gary v.State, 760 So.2d 743, 748 (Miss. 2000). Moreover, the United States Supreme Court has recently stated that when reviewing a trial court's ruling on a Batson
challenge, an appellate court should not defer to the trial court if it did not make "specific finding[s] on the record" regarding each of the prosecutor's explanations for its strikes. See Snyder v. Louisiana, ___ U.S. ___,128 S.Ct. 1203, 1209, 170 L.Ed.2d 175, 182 (2008) ("[D]eference is especially appropriate where a trial judge has made a finding that an attorney credibly relied on demeanor in exercising a strike. Here, however, the record does not show that the trial judge actually made a determination concerning Mr. Brooks' demeanor. The trial judge was given two explanations for the strike. Rather than making a specific finding on the record concerning Mr. Brooks' demeanor, the trial judge simply allowed the challenge without explanation."); cf. id. at 1213 (Thomas, J., dissenting).
 ¶ 32. The majority essentially argues that the trial court was not required to make any findings of fact regarding the State's race-neutral reasons for its strikes against African-American venirepersons. *Page 950 
The only case it can cite in support of its argument isBurnett v. Fulton, 854 So.2d 1010 (Miss. 2003).Burnett involved a complete mischaracterization ofHatten and thus was wrongly decided. TheBurnett Court interpreted the Hatten Court's holding to be merely admonitory when it clearly was not: "[W]e today decide it necessary that trial courts make an on-the-record, factual determination, of the merits of the reasons cited by the State for its use of peremptory challenges against potential jurors. This requirement is to be prospective in nature." Hatten, 628 So.2d at 298
(emphasis added). The Burnett Court failed to recognize how essential it is that trial courts make on-the-record factual determinations when ruling onBatson challenges. If a trial court does not make findings of fact, it is extremely difficult for us to determine why the court ruled the way it did, and therefore whether that ruling should be upheld. See id., ("Obviously, where a trial court offers clear factual findings relative to its decision to accept the State's reasons for peremptory strikes, the guesswork surrounding the trial court's ruling is eliminated upon appeal of a Batson issue to this Court."); Burnett, 854 So.2d at 1017 (McRae, P.J., dissenting) ("How are we to review the trial judge's findings of fact regarding the proposed race-neutral reasons when no specific findings are made?"). Accordingly, Burnett
should be overruled, and we should continue to adhere to our holding in Hatten.
 ¶ 33. A trial court certainly does not "need [to] make detailed findings addressing all the evidence before it."Miller-El v. Cockrell, 537 U.S. 322, 347,123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). But, contrary to the assertions of the majority, a trial court does need to make some factual findings regarding the race-neutral reasons given for each strike. In this case, the trial court simply did not make any findings of fact. It gave the following explanation for its ruling:
 [T]hey have given what the Court considers race-neutral reasons for these strikes. The Court does not see these reasons as pre-textual, not race-based. Therefore, jurors, as I understand it, of the African-American race that were tendered by the State; Jurors 4, Ethel Lee Haynes; Juror 9, Barbara Michelle McDonald; Juror 12, Tommy L. Griffin, and Juror 15, Shirley Ann Braylock. So the defendant's motion is overruled.
Clearly, the trial court did not give a "clear and reasonably specific" explanation of its ruling with respect to the strikes of McMillan and Lagrone; indeed, the court's ruling is based on nothing more than its ipse dixit. Unlike the trial court in Hotten, it "merely accept[ed] the specific reasons given by the prosecution at face value, . . . [instead of] consider[ing] whether they were contrived."Hatten, 628 So.2d at 299. Because of the trial court's failure to make an on-the-record factual determination of whether the State's reasons were non-pretextual, we should, at the very least, remand this case for a hearing and findings in accordance with Hatten. See, e.g., Johnson v. State,754 So.2d 1178, 1180 (Miss. 2000) (remanding for a hearing in accordance with Hatten). However, I would hold that the trial court's failure in this case to make an on-the-record factual determination constitutes reversible error.
 ¶ 34. "Hatten does not require literal truth in the reason proffered. It only requires that there be some basis in fact sufficient to allow the court to make a reasonable judgment that it is not contrived." Snow v. State,800 So.2d 472, 480-81 (Miss. 2001). Because the court did not determine whether the State's allegations that McMillan and Lagrone were related to individuals who had been prosecuted had some basis in fact, there is no way to determine if its judgment that *Page 951 
these allegations were not contrived was reasonable. When a prospective juror is struck based on information received from outside sources, the trial court has a duty to probe the reliability of this information:
 While we do not hold today that our trial judges should conduct a "mini-hearing" within a Batson hearing each time a peremptory challenge is exercised based on information gained from outside sources, we do depend on the trial courts to exercise caution to ensure that peremptory challenges based on information from outside sources is credible and supported by on-the-record factual findings to this effect and that a complete record is made on this issue. If in doubt about the validity of outside information, the trial court should do what is necessary to ensure the proposed reasons are non-pretextual. This may include questioning the outside source on the record.
Bravmer v. State, 872 So.2d 1, 12 (Miss. 2004). The trial court in this case did not make any effort to determine whether the information the assistant district attorney received from the law enforcement officers about McMillan or Lagrone was true. The trial court's failure to make any factual findings regarding this outside information, in my judgment, requires reversal. See Bounds v. State,688 So.2d 1362, 1367 (Miss. 1997), overruled on other grounds by Brownv. State, 890 So.2d 901, 913 (Miss. 2004) (reversing and remanding for a new trial because of failure to comply withHatten); Bogan v. State, 811 So.2d 286, 288
(Miss.Ct.App. 2001) (same).
 ¶ 35. For the foregoing reasons, I would reverse the judgment of the trial court and remand this case for a new trial.
GRAVES, J., JOINS THIS OPINION.
[5] During voir dire the State did ask whether any of the venirepersons had a relative or close friend who had "ever been arrested or charged with a felony," but the record does not reflect whether McMillan or Lagrone raised their hands.
[6] Justice Graves stated in Howell:
 Allowing the State to present uncorroborated facts and information to the court in support of its peremptory challenge of black jurors after the voir dire process has been completed denies [the defendant] the basic fairness guaranteed under the Constitution and rewards the State for failure to ask any relevant questions of [the stricken venire-persons].
Id. at 767-68 (emphasis in original). I also agree with Justice Graves that there should be a "require[ment] [that] the party attempting to exercise the peremptory strike . . . question the person who is the object of that strike, before it may challenge them." Id. at 768.