KING, Justice,
dissenting:
¶ 190. Because the trial court failed to fulfill its responsibilities on the Batson objections, and because I believe the record reflects merit to Corrothers’s Batson claim, I dissent.
1. Batson Procedure in the Trial Court
¶ 191. In order to prevent the use of peremptory strikes on the basis of race, the United States Supreme Court in Bat-son invoked a three-step procedure. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In the first step, the party who objects to a peremptory strike must establish a prima facie case of purposeful discrimination. Id. at 96, 106 S.Ct. 1712. This step entails three elements:
(1) To establish such a case, the defendant first must show that he is a member of a cognizable racial group ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant’s race.
(2) Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits “those to discriminate who are of a mind to discriminate.” ... (3) Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.
Id., 106 S.Ct. 1712 (citations omitted).
¶ 192. Once the opponent of the strike establishes a prima facie case, the second step shifts the burden to the State to provide a race-neutral explanation for the use of the challenged peremptory strike. Id. at 97, 106 S.Ct. 1712. In the third Batson step, the trial court determines whether the defendant has established purposeful discrimination. Id. at 98, 106 S.Ct. 1712.
¶ 193. In today’s case, once Corrothers presented his Batson challenge — which is quoted in full in the majority opinion — the trial court found that a prima facie case had not been established. Despite this finding, the trial court invited the State to present race-neutral reasons for its peremptory strikes. The trial court stated:
Well, first let me say this before I ask the State to respond, you know, it’s my understanding that in order to make a Batson challenge that the motion should be made and I may have this wrong but that the motion should be made as soon as a discriminatory pattern is detected so that the court can take control of the situation at that time. You know, and deal with the strikes as they occur and make whatever corrections can be made to the discretionary pattern if there is one. And I’m handicapped now because I can’t do that, number l.[38] But number *344 2, the court’s opinion is that there has not been a prima facie case made. However, I could be wrong on both points one and point two. I don’t have any authority that this is appropriate to do but I always think that it’s a good idea to invite the opponent of the motion to make their record on their reasons and I would invite and ask the State to do so at this time.
Because the focus of Batson is to ensure peremptory strikes are not exercised on the basis of race, if the proponent of a strike provides race-neutral reasons for the strike without the trial court finding a prima facie case, the requirement of a prima facie showing is rendered moot and the trial, court must determine if the proffered reasons for the strikes are in fact race-neutral. Manning v. State, 735 So.2d 323, 339 (Miss.1999) (“When the prosecution gives race-neutral reasons for its peremptory strikes, the sufficiency of the defendant’s prima facie case becomes moot.”); Mack v. State, 650 So.2d 1289, 1298 (Miss.1994). See also Wilson v. Strickland, 953 So.2d 306, 312 (Miss.Ct. App.2007) (“Since [counsel] gave alleged race-neutral reasons without objecting to the [trial court’s] request, his argument on appeal that [plaintiff] did not meet his prima facie showing of intentional discrimination is moot.”).
¶ 194. Despite the trial court not finding a prima facie case, the State in today’s case provided race-neutral reasons for its peremptory strikes of the five jurors addressed in Corrothers’s Batson challenge — Carol Ray, Betty Collins, Phyllis Berry, W.C. Brim, and Deidre Hereford. After the State addressed each of the five challenged jurors, Corrothers rebutted the State’s reasons for striking Brim; but he did not address the other four challenged jurors. Once the defense addressed Brim, the trial court asked the defense if they had “anything else,” and the defense responded that they did not:
By the Court: Anything else for the record?
By Mr. Rushing: No, Your Honor.
By the Court: I told you what I’m doing. Let’s call the jury.
¶ 195. The trial court in today’s case failed to perform step three of the Batson analysis — determining whether the defendant has established purposeful discrimination. Id. at 98, 106 S.Ct. 1712. This determination hinges on whether the facially nondiscriminatory reasons proffered by the State are credible or are merely pretextual for discrimination. Mack, 650 So.2d at 1298. And, typically during this step, “the decisive question will be whether counsel’s race-neutral explanation for a peremptory challenge should be believed.” Snyder v. Louisiana, 522 U.S. 472, 485, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) (citing Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). Further, we have held that, when presented with a Batson challenge, “it is necessary that trial courts make an on-the-record, factual determination, of the merits of the reasons cited by the State for its use of peremptory challenges against potential *345 jurors.” Hatten v. State, 628 So.2d 294, 298 (Miss.1993).
¶ 196. The trial judge indicated that allowing the State to proffer race-neutral reasons for its strikes was merely for reasons of form, and it is clear from the record that the trial judge began the Bat-son hearing with no intention of taking any action. This is even more apparent by the trial court’s incorrect assertion that Cor-rothers’s Batson objection was untimely. Further, the trial judge admitted that he “did not have the demographic or the races of the jurors before me.” Instead of analyzing the State’s proffered race-neutral reasons and the totality of the circumstances, the trial judge in today’s case referred back to his initial findings — which are quoted above — relating to the timing of Corrothers’s motion and the prima facie case. Because the trial court failed to perform step three of Batson, this Court should reverse the trial court on this issue.
2. Procedural Bar
¶ 197. This Court is fond of saying it reviews death penalty cases with heightened scrutiny. Batiste v. State, 121 So.3d 808, 828-29 (Miss.2013); Grayson v. State, 118 So.3d 118, 125 (Miss.2013); Fulgham v. State, 46 So.3d 315, 321 (Miss.2010); Moffett v. State, 49 So.3d 1073,1079 (Miss.2010); Gillett v. State, 56 So.3d 469, 479-80 (Miss.2010). The majority and special concurring opinions argue that Corroth-ers’s Batson challenge is, in part, procedurally barred. Because Corrothers provided rebuttal only for Brim during the Batson hearing, the majority and special concurring opinion find that he is procedurally barred from challenging the trial court’s findings with respect to the four other challenged jurors. Likewise, the majority finds that Corrothers cannot challenge on appeal the State’s striking of three jurors who were not specifically mentioned during the Batson hearing. The suggestion that the Batson objection is barred from consideration by this Court on appeal appears to be a heightened search for a procedural bar in a death penalty case, instead of an application of the heightened scrutiny it requires under the law.
¶ 198. For the reasons discussed below, I disagree.
¶ 199. When presented with a Batson challenge, the trial court has “a duty to look at the State’s use of peremptory challenges in toto.” Flowers, 947 So.2d at 937. See also Miller-El v. Dretke, 545 U.S. 231, 252,125 S.Ct. 2317,162 L.Ed.2d 196 (2005) (Batson “requires the judge to assess the plausibility of [the State’s reasons] in light of all evidence with a bearing on it.”); Stewart v. State, 662 So.2d 552, 559 (Miss.1995) (“the trial court must consider all the relevant circumstances, such as the way prior peremptory strikes have been used and the nature of the questions posed on voir dire.”) (emphasis added). Although Corrothers did not specifically mention during the Batson hearing three jurors that the State struck through the use of peremptory strikes, these strikes are part of the relevant circumstances that the trial court must consider. As such, Corroth-ers’s argument related to these strikes is not procedurally barred from consideration by this Court.
¶ 200. Further, Corrothers is not procedurally barred from contesting the State’s strikes of the four jurors for whom he did not provide rebuttal during the Batson hearing. Although the defendant may provide rebuttal, Batson does not require the opponent of a peremptory strike to rebut the opponent’s proffered race-neutral basis. Under Batson’s three-step procedure, once the State has presented race-neutral reasons to rebut the defendant’s prima facie case, the trial court *346 should determine whether the defendant has established purposeful discrimination. Batson, 476 U.S. at 97-98, 106 S.Ct. 1712.
¶201. This Court’s mistaken application of procedural bar to Batson issues has been addressed previously. See Pitchford v. State, 45 So.3d 216, 266-68 (Miss.2010) (Graves, J., dissenting). As further addressed in the dissenting opinion in Pitch-ford, 45 So.3d at 267, this Court’s application of the procedural bar has stemmed either from cases that did not find that the procedural bar should apply to this issue or from pre — Batson cases.
¶ 202. Further, considering the gravity of the rights protected by Batson — the defendant’s right to a fair trial and a juror’s right not to be excluded on account of race — applying a procedural bar is inappropriate. We are “under an affirmative duty to enforce the ... policies embodied in [the] prohibition” on the discrimination in the selection of jurors. Powers v. Ohio, 499 U.S. 400, 416, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). For these reasons, I disagree with the application of the procedural bar to this issue.
3. Merits of Corrothers’s Batson Claim
¶203. A review of the record reveals that Corrothers’s Batson claim has merit.
¶ 204. The jury pool in today’s case consisted of twelve African Americans, eight of whom were struck by the State; and thirty-two whites, seven of whom were struck by the State. While African Americans represented twenty-seven percent of the jury pool, they represented sixty-five percent of the State’s strikes. Moreover, just as this Court has said a defendant is not entitled to a jury that reflects area demographics, the fact that it may reflect area demographics does not establish nondiscrimination. See Simon v. State, 688 So.2d 791, 806 (Miss.1997).
¶ 205. Contrary to the inference in the special concurring opinion, the mere fact that the State accepted some African Americans as jurors while rejecting others does not mean there has been no discrimination. This is especially true where the reasons offered for the strikes are flimsy. In this case, the State struck twice as many African Americans (eight) as it accepted (four). It should be noted that the fourth African American (Mark Scales, who was seated as Alternate Three) was seated after the State had exercised all of its peremptory strikes.
¶ 206. Batson protects both the defendant and prospective jurors from discrimination. Powers, 499 U.S. at 413, 111 S.Ct. 1364 (“Both the excluded juror and the criminal defendant have a common interest in eliminating racial discrimination from the courtroom.”). Since the prospective jurors cannot challenge the proceedings, the trial court has a duty to look for patterns of discrimination. Miller-El, 545 U.S. at 252, 125 S.Ct. 2317; Batson, 476 U.S. at 97-98, 106 S.Ct. 1712. It appears in today’s case that the trial court failed in that.
¶ 207. The State claimed that Carole Ray failed to understand some of the questions on the jury questionnaire. There is no indication of which ones it is claimed that she did not understand. See Flowers, 947 So.2d at 924 (“lack of support in the record for the reason given for a peremptory strike has been identified as an indicator of pretext”). Nor does there appear to have been any effort by the State in voir dire to identify and clarify any of Ray’s responses. See Miller-El, 125 S.Ct. at 2328 (failing to conduct meaningful voir dire on subject on which State allegedly is concerned suggests that “explanation is a sham and a pretext for discrimination”). In fact, the State did not ask Ray any questions during voir dire. Further, Cor- *347 rothers has identified several similar white venire members who did not complete the juror questionnaire correctly and were not challenged by the State. See Flowers, 947 So.2d at 917 (“the presence of unchallenged jurors of the opposite race who share the characteristic given for the basis of the challenge” is suspect). Justin Nor-wood — a white juror who was tendered by the State — failed to complete and turn in a questionnaire. If the State was concerned about a juror’s ability to understand the questions, surely a juror’s failure to complete the questionnaire would raise red flags. While failure to understand the questionnaire may be a facially race-neutral basis for a strike, the trial court — and this Court — must look beyond the proffered race-neutral reasons and examine the totality of the circumstances to determine if the proffered reason is discriminatory. When the appropriate review is applied to this case, the State’s reason for striking Ray becomes suspect.
¶ 208. The State struck W.C. Brim because of the belief that a member, or members, of his family had been charged with a crime. Corrothers has identified several similarly situated white jurors who were accepted, while Brim was not. See id. For example, Justin Norwood stated that he had an uncle who was convicted and served time for a crime; but the State tendered Norwood as a juror. Further, Brim stated during voir dire that these convictions would not affect his ability to serve as an impartial juror.
¶ 209. Moreover, the State struck Brim, Phyllis Berry, and Deidre Hereford because they stated on their questionnaires that they were generally against the death penalty. The special concurring opinion states that “[t]he state struck every person, including Caucasians, that indicated an opposition to the death penalty on their questionnaire.” This statement does not support the contention that discrimination did not occur in today’s case. As mentioned above, Justin Norwood — a white juror tendered by the State — failed to complete a juror questionnaire. As such, his views on the death penalty cannot be compared to those of Brim, Berry, and Hereford. Moreover, the portion of the questionnaire for Joseph Putt — another white juror tendered by the State — which addresses the juror’s views on the death penalty is not included in the record for today’s case. Again, it cannot be said that Putt’s views on the death penalty differ from those of Brim, Berry, and Hereford.
¶210. Clearly, the State’s excuses for rejecting African Americans as jurors appear to be pre-textual and discriminatory. This, along with the failure of the trial court to honor its responsibilities are sufficient reason to reverse and remand this matter for a new trial.
¶ 211. Additionally, I join Justice Coleman’s opinion that it was error to exclude the testimony of Dr. Neuschatz.
KITCHENS, J„ JOINS THIS OPINION.

. The trial judge indicated his belief that he had no ability to address any patterns of discrimination in the jury-selection process unless they were immediately called to his attention. Such a position is inconsistent with the responsibility of the trial court to protect both the parties and veniremen from unlawful discrimination. See Booker v. State, 5 So.3d 356, *344 359 (Miss.2008) (evaluating Batson challenge which was made, in part, post-conviction); see also Flowers v. State, 947 So.2d 910, 937 (Miss.2007) ("[T]he trial court has a duty to look at the State’s use of peremptory challenges in toto.”). The parties exercised their respective challenges in chambers. And, at the time Corrothers raised his Batson objection, the jurors selected had neither been notified nor sworn. Beyond question, at that point, the trial court still had full control of the jury-selection process. It could then and there have corrected any unlawful discrimination in the selection process by disallowing the discriminatory challenges and placing those persons back into their previous places on the venire list.